JEN HUNG NG, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 85–7159.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 1986.

Decided Nov. 12, 1986.

Edward E. Merges, Dan P. Danilov, Seattle, Wash., for petitioner.

Joan E. Smiley, Office of Immig. Litigation, Dept. of Justice, Washington, D.C., for respondent.

Before WRIGHT, TANG and REINHARDT, Circuit Judges.

TANG, Circuit Judge:

This appeal involves the attempts of a 53–year-old resident of Hong Kong, over a period of ten years, to secure the right to live in this country with his family. Petitioner Jen Hung Ng arrived in the United States in 1976 for the purpose of visiting his dying mother. Shortly thereafter Ng petitioned the Immigration and Naturalization Service (INS) for an adjustment of status, which, if granted, would allow Ng to remain in this country to live near his U.S. citizen father, and a brother. The Immigration Judge, and later the Board of Immigration Appeals (BIA) denied Ng's application and his appeals. The BIA most recently denied Ng's motion to reopen despite the fact that Ng, during the pendency of the appeal, was married to a U.S. citizen. The INS has denied Ng's application on the basis of Ng's fraudulent visa application in 1951 and the alleged misconduct on the part of Ng's father in attempting to secure his son's entry into the United States.

Procedurally, petitioner Jen Hung Ng seeks review of a March 13, 1985 decision by the BIA. In that decision the BIA (1) reconsidered and affirmed its prior order denying adjustment of status and (2) denied Ng's motion to reopen to apply for adjustment of status based on his marriage to a U.S. Citizen under 8 U.S.C. § 1182(a)(19). We reverse and remand.

## FACTS

The facts are somewhat prolix and may best be summarized in chronological form.

| | |
|---|---|
| 1933 | Jen Hung Ng is born. Ng is a native of China and a resident of Hong Kong. |
| 1937 | Ng's father enters U.S. under a false identity. The father subsequently serves in the United States Navy in WWII. Ng's mother and younger brother fraudulently enter the U.S. in 1948 as the wife and son of a U.S. citizen. Ng's father is naturalized as a U.S. citizen in 1963. |
| 1951 | Ng applies for a U.S. passport under a false identity. The fraud is discovered and the application denied. |
| 1966 | Ng applies for and is denied a U.S. visa on the basis of the 1951 fraud. 8 U.S.C. § 1182(a)(19). |
| Jan. 21, 1976 | Ng applies for a nonresident visa in order to visit his critically ill mother. Ng is granted a waiver of nonadmissibility on humanitarian grounds, 8 U.S.C. § 1182(d)(3)(A). Ng enters the U.S. on Feb. 22, 1976. Ng's mother had in fact died on Jan. 11, 1976, but Ng was not informed of this until his arrival in the U.S. The record reveals that Ng's father had submitted a letter requesting that Ng be allowed to visit his mother in Feb. 1976, after the mother had died. Ng was granted a voluntary departure without the institution of deportation proceedings on Apr. 20, 1976. Ng did not depart and on Aug. 16, 1977 an Order to Show Cause was issued. |
| Mar. 9, 1978 | Ng applies for adjustment of status. |
| Mar. 3, 1980 | Immigration Judge finds Ng statutorily ineligible for adjustment of status because of the 1951 fraud and thus deportable under 8 U.S.C. § 1251(a)(2). The Immigration Judge further notes that even if Ng were statutorily eligible for relief, the Judge would deny the application as a matter of discretion on the basis of Ng and his father's history of disregard for U.S. immigration laws. |
| Apr. 10, 1981 | BIA dismisses Ng's appeal from the denial of his application for adjustment of status on the same grounds as the immigration judge. BIA grants Ng thirty day voluntary departure. Ng does not depart. |
| May 4, 1981 | Ng moves to reopen or, alternatively, for reconsideration of BIA decision. Petition is misplaced by INS and not considered until Mar. 13, 1985. |
| Aug. 3, 1983 | Ng files second application for adjustment of status based on his Jun. 24, 1983 marriage to a U.S. citizen. This application is treated as a motion to reopen. 8 C.F.R. § 242.22. |
| Mar. 13, 1985 | BIA grants motion for reconsideration and upon reconsideration affirms its Apr. 10, 1981 order denying adjustment of status. BIA concludes that Ng does not merit favorable exercise of |

discretion in light of Ng's prior immigration fraud and the past misconduct of Ng's father. Based on Ng's marriage to a U.S. citizen, BIA finds Ng statutorily eligible for the adjustment of status, 8 U.S.C. § 1255(a), but denies the motion to reopen as a matter of discretion. The equities the BIA considers in Ng's favor are Ng's citizen spouse and citizen father. The unfavorable factors the BIA considers include the misconduct of Ng's father and Ng's failure to depart in accordance with 1981 grant of voluntary departure.

## DISCUSSION

■ The BIA's review of an order denying adjustment of status and of a motion to reopen an application for adjustment of status is reviewed for abuse of discretion. *Saldana v. INS*, 762 F.2d 824, 827 (9th Cir.1985); *Mattis v. INS*, 774 F.2d 965, 968 (9th Cir.1985); *Vasquez v. INS*, 767 F.2d 598, 600 (9th Cir.1985); *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir.1985).

■ An abuse of discretion will be found when the denial was arbitrary, irrational or contrary to law. *Ahwazi*, 751 F.2d at 1122.

■ To obtain adjustment of status, an alien must make out a prima facie case of eligibility. An alien must demonstrate that he or she (1) has applied for adjustment; (2) is eligible to receive an immigrant visa and is admissible for permanent residence; and (3) an immigrant visa is immediately available. 8 U.S.C. § 1255(a). Ng is excludable from admission (ineligible for adjustment of status) into the United States because he willfully misrepresented a material fact when applying for a passport in 1951. 8 U.S.C. § 1182(a)(19). When Ng married his present wife in 1983, Ng became eligible for a waiver of excludability under 8 U.S.C. § 1182(i) as the spouse of a United States citizen. In August 1983, Ng filed a new application for adjustment of status, based on his marriage to a United States citizen, along with an application for a waiver of excludability. The approval of an application for waiver of excludability, like the approval for a petition for adjustment of status, is subject to the discretion of the Attorney General, 8 U.S.C. §§ 1182(i), 1255(a).

■ The BIA has discretion to deny a motion to reopen for adjustment of status, and to affirm an order denying adjustment of status, after a prima facie case is established *or* without considering whether a prima facie case of statutory eligibility has been shown if the BIA would deny the ultimate application for relief as a matter of discretion. See *I.N.S. v. Rios-Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985); *Vasquez v. INS*, 767 F.2d at 601; *Mattis*, 774 F.2d at 968. However, reliance by the BIA on improper factors in reaching a decision is an abuse of discretion that we are required to reverse.

■ We have construed *Rios-Pineda* as affording the INS considerable discretion in denying motions for reopening but we require that the BIA state its reasons and show proper consideration of all factors when weighing equities and denying such relief. *Mattis*, 774 F.2d at 968. The BIA must weigh both favorable and unfavorable factors. *Id.*

■ The BIA's denial of relief can be affirmed only on the basis articulated in the decision, and this court cannot assume that the BIA considered factors that it failed to mention in its decision. *Id.* at 967.

■ Marriage to a U.S. citizen is considered a favorable factor, *id.; Vasquez* 767 F.2d at 602; *Ahwazi*, 751 F.2d at 1123. In addition, gainful employment and financial responsibility are relevant, and favorable, factors. *Mattis*, 774 F.2d at 969.

## 1981 ORDER DENYING ADJUSTMENT OF STATUS

With regard to the 1981 order denying adjustment of status, the BIA, in its March 13, 1985 decision, conceded that Ng had established prima facie eligibility for adjustment of status. The BIA relied on its discretionary power, however, to deny adjustment of status.

■ The BIA considered the misconduct of Ng's father as an unfavorable

factor in affirming its order denying adjustment of status. The BIA stated that it would not "condone the generations of fraud" set forth in this case. Ng argues that consideration of this factor was improper. The inclusion of an improper factor in reaching a discretionary decision is grounds for remand. *Siang Ken Wang v. INS*, 413 F.2d 286, 287 (9th Cir.1969) (suspension of deportation); *So Chun Chiang v. INS*, 602 F.2d 608, 612 n. 7 (3d Cir.1979) (same).

 We think it fundamental that it is Ng's character and his conduct that the INS must consider, and no other. Apart from Ng's fraudulent visa application in 1951, the record contains no evidence that would link Ng to his father's misconduct or to that of anyone else. We find that BIA consideration of the conduct of an individual not a party to the proceeding to be a form of guilt by association. We strongly disapprove of such reasoning.

 We are troubled by the BIA's reference to the past misconduct of Ng's father for other reasons as well. Although the senior Ng fraudulently entered this country, he served in the United States Navy during the second World War, was honorably discharged, and was naturalized as a U.S. citizen in 1963. The senior Ng's naturalization occurred at a time when the INS had instituted what has been termed the Chinese Confession Program. Under this Program, the INS publicly invited and encouraged Chinese aliens to come forward to admit their alienage and apply for adjustment of their immigration status. *Ng v. Pilliod*, 279 F.2d 207, 210 (7th Cir.1960); *Eng v. INS*, 464 F.2d 1265, 1266 (2d Cir. 1972); *Eng v. INS*, 334 F.Supp. 897, 898 (S.D.N.Y.1971). *See* S.Rep. No. 2276, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S. Code Cong. & Ad. News 4024, 4027; *Chinese Confession Program of the Immigration and Naturalization Service*, 37 Interpreter Releases No. 2 (January 15, 1960).

Most Confession Program participants, like Ng senior, had committed some perjury or fraud in connection with United States immigration or passport procedures. Since the relief granted these participants was purely discretionary, the INS, in effect, forgave the Confession Program beneficiaries for any past immigration-related misconduct.

The Confession Program benefitted the INS as well as the participants. Over the years many Chinese had obtained entry into the United States by assuming false identities or false relationships to U.S. citizens. These frauds were further perpetuated by the creation of second and third generations of "paper families," i.e., wholly fictitious records of descendants. These records, in turn, were used to create immigration "slots," which were then utilized by alien Chinese abroad to gain recognition and entry into the United States as citizens. In return for INS assistance in processing their adjustment of status applications, Confession Program applicants made full disclosure of their identities and the composition of their true as opposed to their "paper" families. In this way the INS was able to identify and close fraudulently created "slots." [1]

Although Ng Senior's prenaturalization misconduct was waived by his subsequent naturalization as a United States citizen, it would appear, the INS, at least indirectly, continues to hold Ng Senior's prenaturalization misconduct against him. Given the history of and official government sanction to the Chinese Confession Program, it appears arbitrary now to saddle the son with the sins of his father and to deny him discretionary relief on the basis of retribution and refusal to "condone generations of fraud."

In sum, we hold that the BIA abused its discretion by attributing the misconduct of Ng's father to Ng himself and then by characterizing that misconduct as an unfa-

---

**1.** By May 1, 1962, the Confession program had processed 5,878 cases and had closed 5,201 fictitious "slots." S.Rep. No. 2276, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S. Code Cong. & Ad. News 4024, 4027.

vorable factor on the BIA scale of discretionary relief.

## 1983 MOTION TO REOPEN

■ There is another ground for our decision as well. The BIA did not consider the facts that Ng was gainfully employed and financially responsible, as it was required to do. See *Mattis,* 774 F.2d at 969. Thus, not only did the BIA consider improper factors, it neglected to consider relevant ones. Each constitutes a separate error requiring reversal and remand.

In 1983, Ng filed a second application for adjustment of status. This application was predicated on the approval of Ng's application for waiver of excludability under 8 U.S.C. § 1182(i). As we have noted, section 1182(i) allows the Attorney General, in the exercise of discretion, to approve the permanent residence application of a spouse of a U.S. citizen even if that spouse is otherwise excludable, as is Ng (based on the 1951 fraud). 8 U.S.C. § 1182(a)(19). The BIA treated the application as a motion to reopen, 8 C.F.R. § 242.22, and denied the motion.

■ The BIA conceded that Ng made out a prima facie case of eligibility, but viewed Ng's marriage to a U.S. citizen and his desire to be near his U.S. citizen father as the only equities in his favor. The BIA ruled that these equities did not outweigh the Ng family's long disregard of U.S. immigration law.

Further, the record indicates that Ng was both gainfully employed and financially responsible. The BIA, however, has neglected to consider this factor.

Again, as noted above, BIA consideration of the misconduct of Ng's family is both arbitrary and capricious.

Ng also argues that the BIA improperly characterized as an unfavorable factor Ng's 1981 failure to depart in accordance with the grant of voluntary departure. Ng had moved to reopen, or alternatively, for reconsideration of the BIA denial of his application for adjustment of status before the grant of voluntary departure expired.

■ The Attorney General can legitimately refuse to reopen proceedings when the petitioner sets forth a prima facie case of statutory eligibility for discretionary relief. *Mattis,* 774 F.2d at 968. See also *INS v. Rios-Pineda,* 105 S.Ct. at 2102 (suspension of deportation). The filing of a motion to reopen or to reconsider, moreover, does not serve automatically to extend a previously set departure date, 8 C.F.R. §§ 103.5, 242.22. However, a failure to depart in accordance with a grant of voluntary departure, occasioned by the pendency of an appeal that makes out a case of prima facie statutory eligibility, may not be used as an unfavorable factor for the purpose of discretionary relief. To hold otherwise would require recognition of a less than legitimate discretionary factor. See *Mattis,* 774 F.2d at 968 (INS must base refusal to reopen on legitimate concerns); see also *Akhbari v. INS,* 678 F.2d 575, 578 (5th Cir.1982) (shifting grounds for deportation to failure to depart may constitute due process violation); *In re Halabi,* 15 I. & N. Dec. 105, 107–08 (B.I.A.1974) (Chairman Roberts, dissenting) (same). As Ng's appeal was an appeal that made out a case for prima facie statutory eligibility, consideration of Ng's failure to depart was improper.

REVERSED and REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.