Zenaida Adviento WATKINS, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Nos. 91–70600, 93–70920.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 1993.

Submission Withdrawn June 1, 1993.

Resubmitted Aug. 8, 1995.

Decided Aug. 16, 1995.

Milton Katz, San Francisco, CA, for petitioner.

Joseph F. Ciolino, Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice, Washington, DC, for respondent.

Before: GOODWIN, HUG, and FLETCHER, Circuit Judges.

HUG, Circuit Judge:

Petitioner, a native and citizen of the Philippines, seeks review of the Board of Immigration Appeals' ("BIA") denial of her motion to reopen deportation proceedings to allow her to seek either adjustment of her status under section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255, or suspension of deportation, section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). We reverse the BIA's decision for abuse of discretion.

## I. *PROCEDURE AND BACKGROUND*

Petitioner entered the United States in 1978 under a nonimmigrant temporary work visa (an H–1 visa). Her visa expired January 25, 1983. In December 1982, she married Theodore Watkins, a United States citizen, and in March 1983, she applied for permanent residence based on her recent marriage. An Immigration and Naturalization Service ("INS") investigation revealed that petitioner's marriage was a sham. Watkins and petitioner admitted this fact at an INS hearing.

Thereafter, the INS instituted deportation proceedings against petitioner. She conceded deportability and requested a grant of voluntary departure. On May 6, 1983, an immigration judge ("IJ") found petitioner deportable pursuant to 8 U.S.C. § 1251(a)(2) and denied petitioner's application for voluntary departure. The IJ found that she lacked good moral character as evidenced by her attempt to circumvent immigration laws through a sham marriage and by giving false statements under oath. Petitioner appealed the denial of voluntary departure to the BIA.

During the pendency of her appeal to the BIA, on August 1, 1983, petitioner married Romulo Francisco, a naturalized United States citizen. On January 16, 1984, petitioner filed with the BIA a motion to remand for adjustment of status based on her second marriage. The BIA consolidated the appeal and the motion, and on December 24, 1985, it denied both. The BIA held that the IJ did not abuse its discretion by denying voluntary departure. Further, the BIA denied the motion to remand for adjustment of status because, even though petitioner had established prima facie eligibility, her prior sham marriage cast suspicion on her second marriage.

In July 1987, petitioner filed a motion to reopen for adjustment of status based on changed circumstances, pursuant to 8 U.S.C. § 1255. In support of the motion, she submitted the birth certificate of her son, a United States citizen, and an immigrant visa petition filed by her husband on her behalf. On August 29, 1991, the BIA denied her motion to reopen. The BIA stated that even assuming that petitioner presented a prima facie case for adjustment of status, "it is unlikely that [she] would be granted adjustment of status in a favorable exercise of discretion" because of her previous disregard of the immigration laws.

Petitioner appealed the denial of her motion to reopen to this Court. On June 1, 1993, we entered an order withdrawing the appeal pending the filing of a motion to the BIA to reopen proceedings to apply for adjustment of status or suspension of deportation. Pursuant to our order, petitioner filed her second motion to reopen on June 29, 1993. Her motion asked the BIA to reopen the proceedings to provide petitioner the opportunity to apply for suspension of deportation, or in the alternative, adjustment of status. The motion was supplemented with the birth certificate of petitioner's second son, an affidavit from a licensed psychologist attesting to the son's medical condition—Attention – Deficit – Hyperactivity – Disorder ("ADHD"), and an affidavit from two residents of petitioner's husband's hometown in the Philippines attesting to the threat of retributive violence facing petitioner's husband and his family if they return to the Philippines.

On October 19, 1993, the BIA denied petitioner's second motion to reopen, finding that petitioner failed to demonstrate a prima facie claim for suspension of deportation because she failed to demonstrate "extreme hardship." The BIA also found that even assuming petitioner had demonstrated extreme hardship or a prima facie claim for adjustment of status, it would deny petitioner's motion for discretionary reasons. This appeal followed.

## II. DISCUSSION

■ We review BIA denials of motions to reopen proceedings for abuse of discretion. *INS v. Rios–Pineda*, 471 U.S. 444, 449, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985). "An abuse of discretion will be found when the denial was arbitrary, irrational or contrary to law." *Jen Hung Ng v. INS*, 804 F.2d 534, 538 (9th Cir.1986).

Petitioner contends that the BIA abused its discretion when it refused to reopen the proceedings against her to allow her to apply for suspension of deportation or adjustment of status based on her 11–year marriage to a United States citizen, the birth of her two United States citizen sons, the medical condition of her youngest child, her 16–year residence in the United States throughout which she worked as a registered nurse, her good moral character, and her family's fear of retributive violence if returned to the Philippines.

■ The BIA can deny petitioner's motion to reopen on any of three independent grounds: (1) "failure to establish a prima facie case for the relief sought," (2) "failure to introduce previously unavailable, material evidence," or (3) "a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992).

In the instant case, the BIA denied petitioner's motion on the first and third grounds: Petitioner failed to establish a prima facie case for suspension of deportation

because she failed to prove extreme hardship, and alternatively, even if the BIA granted the motion to reopen, it would refuse to grant the underlying relief requested as an exercise of its discretion. We reverse because in both cases, the BIA abused its discretion.

## A. *Prima Facie Case*

The Board did *not* rule that petitioner failed to make out a prima facie claim for adjustment of status. In fact, the BIA noted in its December 24, 1985 decision that petitioner was, indeed, eligible for adjustment of status. It denied the relief as a matter of discretion. Petitioner thus failed to establish a prima facie case only for suspension of deportation.

■ Petitioner must meet three requirements to receive a suspension of deportation: (1) continuous physical presence in the United States for seven years preceding the filing of the application; (2) good moral character during such period; and (3) the deportation will result in "extreme hardship" to the alien, or to her United States citizen or permanent resident spouse or children. 8 U.S.C. § 1254(a)(1). The BIA held that petitioner failed to make out a prima facie case of suspension of deportation because she did not show extreme hardship.

■ In finding that petitioner did not show extreme hardship, the BIA abused its discretion in three ways. It did not consider all relevant factors before ruling, it did not consider the cumulative effect of the factors it did consider, and it did not provide a reasoned explanation for its conclusions.

The BIA stated that "[w]e find the respondent has failed to make a prima facie showing that the professional and social changes she would face upon returning to the Philippines rise to the level of extreme hardship." It then concluded that the birth of a second child, in and of itself, did not constitute extreme hardship: "[R]egarding the birth of her second United States citizen child, we find that this fact standing alone does not change our finding. It is well-settled that the birth of a child in the United States by itself does not constitute a prima facie case of

extreme hardship." Finally, the BIA stated that "respondent's children are still young, and should have little difficulty in adjusting to life in the Philippines, should they accompany their mother there." The BIA discounted testimony that the second child could not be adequately treated for his "emotional disorder" in the Philippines.

But the BIA failed to mention several relevant factors in its decision denying extreme hardship: the hardship to petitioner's United States citizen spouse of 11 years, her family's fear of retributive violence if returned to the Philippines, and her second son's inability to learn a foreign language.

The BIA has discretion to interpret "extreme hardship" narrowly if it so chooses, *INS v. Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (per curiam), "as long as it considers all factors relevant to the hardship determination and states its reasons for denying the requested relief," *Ramirez–Durazo v. INS,* 794 F.2d 491, 498 (9th Cir.1986). "When the BIA distorts or disregards important aspects of the alien's claim, denial of relief is arbitrary, and the BIA is considered to have abused its discretion." *Saldana v. INS,* 762 F.2d 824, 827 (9th Cir.1985), *modified,* 785 F.2d 650 (9th Cir.1986); *see also Jen Hung Ng,* 804 F.2d at 538. "The BIA's denial of relief can be affirmed only on the basis articulated in the decision, and this court cannot assume that the BIA considered factors that it failed to mention in its decision." *Jen Hung Ng,* 804 F.2d at 538; *see also Batoon v. INS,* 707 F.2d 399, 402 (9th Cir.1983).

■ By law, a relevant factor for suspension of deportation is hardship to a citizen spouse or citizen children, in addition to hardship to the alien herself. 8 U.S.C. § 1254(a)(1); *Cerrillo–Perez v. INS,* 809 F.2d 1419, 1424 (9th Cir.1987) (finding abuse of discretion where BIA failed to consider hardship to family members falling within statutory categories of § 1254(a)(1)). Petitioner's deportation will force her United States citizen husband, Francisco, to choose between moving to the Philippines (where he fears for his life), abandoning his wife and raising his two children alone in the United States, or losing both his wife and his children. The

BIA abused its discretion by not considering this hardship to the husband.

■ The BIA also failed to consider in its decision the fact that the family fears retributive violence if they are sent to the Philippines. Francisco's father was murdered in the Philippines by military men, and his mother filed charges against them. The soldiers have threatened reprisals against the family, and part of the family fled to the United States in fear for their lives. An affidavit corroborating these events was submitted to the BIA with the psychologist's report. The BIA did not mention these facts or the affidavit anywhere in its decision, nor did it indicate in any way that it had considered them. It merely stated that petitioner's hardships are "no different than any other person returning to a country after an extended absence."

■ Finally, although the Board mentioned, albeit in a conclusory fashion, the "limited weight" it would give the psychologist's opinion that the youngest child could not get adequate medical care in the Philippines, it failed to note the most salient feature of the psychologist's affidavit: "Children with ADHD do not cope well with change, and it is unlikely that [petitioner's son] is capable of sustaining his attention long enough to master the skills required to be educated in a foreign language." It also failed to consider the psychologist's expert opinion that "[t]he emotional trauma suffered by a normal child being transplanted from the prosperity of the United States to a developing, third world country like the Philippines is increased one hundred times in a child suffering from ADHD." In *Batoon*, the Ninth Circuit reversed for abuse of discretion the BIA's refusal to reopen deportation proceedings to consider suspension of deportation because the BIA "erred in ignoring [an] important aspect of the medical evidence." 707 F.2d at 402. As it did in this case, the BIA in *Batoon* concluded that petitioner's medical condition did not constitute extreme hardship because adequate care was available in the Philippines. But it ignored a psychiatrist's opinion that the deportation would probably result in effects requiring long-term psychiatric hospitalization. Simi-

larly, in this case, the BIA ignored the psychiatrist's opinion that petitioner's youngest son, who is American-born, is incapable of learning a foreign language. Even if, after years of hard work and the best medical, psychiatric and educational assistance, the child eventually becomes proficient in Tagalog, in the meantime he will have lost years of education. Moreover, he and his family will have invested years of their financial and emotional resources in helping him do something as simple as communicate, a task that he has already mastered in this country. The specter of a child losing out on an education because he is forced to live in a foreign country whose language he is incapable of learning is a compelling example of hardship, and the BIA abused its discretion by ignoring it.

■ In the face of such strong evidence to the contrary, the BIA's statement that the children "are still young, and should have little difficulty in adjusting to life in the Philippines" is a bare conclusion with no support or explanation and "falls short of the consideration of the 'specific circumstances of citizen children' and the 'express and considered conclusion as to the effect of those circumstances upon those children' that is required by this circuit." *Delmundo v. INS,* 43 F.3d 436, 443 (9th Cir.1994) (quoting *Cerrillo–Perez,* 809 F.2d at 1426); *see also Jara–Navarrete v. INS,* 813 F.2d 1340, 1342–43 (9th Cir.1987) (reversing a BIA decision for abuse of discretion because its conclusion that " 'these 3 children are still very young and they should be able to adapt successfully to Mexico' " was "cursory and generalized"). The BIA abuses its discretion if it "fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Yepes–Prado v. INS,* 10 F.3d 1363, 1366 (9th Cir.1993). "Cursory, summary, or conclusory statements are inadequate." *Batoon,* 707 F.2d at 401; *see also Saldana,* 762 F.2d at 827. In *Yepes–Prado,* the Ninth Circuit reversed an IJ opinion for abuse of discretion because the IJ "failed to offer a *reasoned* explanation of why the only adverse factor ... outweighed all of the equities in Yepes–Prado's favor." 10 F.3d at 1370 (emphasis retained). The BIA made

the same mistake here: It failed to offer a reasoned explanation of why petitioner's son should have no trouble adjusting to life in the Philippines, when a licensed psychologist has sworn that he is likely incapable of ever learning the country's language. *See Prapavat v. INS*, 662 F.2d 561, 562 (9th Cir.1981) (finding abuse of discretion where BIA undertook only cursory review of child's medical problems). *Cf. Ramirez–Durazo*, 794 F.2d at 498 (affirming BIA finding of no extreme hardship where child of parent deported to Mexico spoke Spanish).

▪ The BIA further abused its discretion because the factors it did consider, it considered in isolation. The BIA "must consider all relevant factors *cumulatively* in deciding whether extreme hardship has been established." *Batoon*, 707 F.2d at 401 (emphasis added); *see also Dragon v. INS*, 748 F.2d 1304, 1306 (9th Cir.1984); *Santana–Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981). To do otherwise is an abuse of discretion. In its decision, the BIA correctly stated the law, but failed to apply it correctly. It found that the professional and social changes *petitioner* would face upon returning to the Philippines would not rise to the level of extreme hardship. It then found separately that the birth of petitioner's second son "standing alone does not change our finding." But the standard is not whether each factor, standing alone, constitutes extreme hardship, but whether the cumulative effect of all factors constitutes extreme hardship.

For these three reasons, we find that the BIA abused its discretion in denying the motion to reopen. The BIA failed to consider all relevant factors, such as hardship to the spouse, fear of persecution, and the child's inability to master a foreign language. It failed to give a reasoned explanation for its conclusion that the children "should have little difficulty in adjusting to life in the Philippines." And the factors it did consider— petitioner's "professional and social changes" and the hardship to the children—were examined in isolation; their cumulative effects were ignored.

### B. *Discretion*

Because petitioner has shown a prima facie case for adjustment of status and suspension of deportation, and because she has raised new material facts (the birth of her second son and his learning disability), the sole remaining basis for denying petitioner's motion to reopen her deportation proceeding rests on an exercise of the Board's discretion. The BIA stated that it was denying petitioner's motion to reopen because it would deny both the suspension of deportation and the adjustment of status on discretionary grounds.

▪ While both suspension of deportation and adjustment of status are discretionary grants of relief, "[e]ven discretion ... has its legal limits." *Doherty*, 502 U.S. at 329, 112 S.Ct. at 728 (Scalia, J., Stevens, J., Souter, J., dissenting). An en banc panel of this Court has held that the BIA's broad discretion to deny motions to reopen is not beyond judicial review. *Batoon v. INS*, 791 F.2d 681, 684 (9th Cir.1986) (en banc). The standard is abuse of discretion. *Id.* "We have construed *Rios–Pineda* as affording the INS considerable discretion in denying motions for reopening but we require that the BIA state its reasons and show proper consideration of all factors when weighing equities and denying such relief." *Jen Hung Ng*, 804 F.2d at 538. "While agencies must have significant flexibility to adapt their practices to meet changed circumstances or the facts of a particular case, they cannot reach their decisions capriciously. Agencies abuse their discretion no less by arriving at plausible decisions in an arbitrary fashion than by reaching unreasonable results." *Yepes–Prado*, 10 F.3d at 1370.

▪ In this case, the BIA's actions were simply irrational. The BIA has refused to review petitioner's case, in spite of her 16–year history in the United States, her much in demand nursing skills, her 11–year marriage, her two American-born children, and her youngest child's medical condition. Petitioner has made out a prima facie case for at least one, if not both, forms of relief requested. The equities are undeniable on her side. The sole ground for denying petitioner's request is the fact that she appealed her initial deportation order: "On May 6, 1983, a final

order of deportation was entered. Since that time, [petitioner] has managed to postpone her deportation through filing a number of appeals and motions to reopen; the present motion is the third before this Board. We do not wish to reward these actions with a discretionary grant of relief." But this is not a case in which petitioner acquired her eligibility for relief by filing a series of "frivolous appeals." *Cf. Rios–Pineda*, 471 U.S. at 448, 105 S.Ct. at 2101. The BIA does not, nor can it, claim that petitioner's appeals were frivolous. *See Sida v. INS*, 783 F.2d 947, 950 (9th Cir.1986) (distinguishing *Rios–Pineda* because the Sidas' appeals were not baseless; therefore, "there should be no impediment to counting the time accrued during the pendency of their appeal."). As the BIA's December 24, 1985, decision acknowledged, petitioner had statutory eligibility for adjustment of status at the time of her first motion to remand. Petitioner filed the motion to remand based on her marriage to her present husband, Romulo Francisco. She has lived with Francisco since January 15, 1983; she lived with him before her visa expired and before her deportation was ordered, and has been married to him for 11 years. Her first motion to reopen was based on the birth of her first son, and her second motion to reopen, filed at the direction of this court, was based on the birth of her second son and his medical condition. Petitioner pursued her very strong claims for relief in an attempt to keep her family together, and because she was statutorily eligible to remain in the United States. The favored status given to the family is firmly entrenched in immigration law: " 'The legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united.' H.R.Rep. No. 1199, 85th Cong., 1st Sess. 7, *reprinted in* 1957 U.S.Code, Cong. & Admin.News 2016, 2020." *Cerrillo–Perez*, 809 F.2d at 1423. Nor did the BIA claim that the sham marriage 12 years ago outweighs the positive equities in this case; to do so would test the limits of rationality. *See Matter of B*, 1 I & N Dec. 611, *reported in* 70 Interpreter Releases 941 (July 19, 1993) (In balancing equities, IJ found that petitioner's prior sham marriage was outweighed by three years of good moral character, warranting a favorable exercise of discretion.). The BIA denied the motion simply because it was filed.

 The BIA's denial of the motion to reopen in this case for the sole reason that petitioner appealed her deportation order was an abuse of discretion. It was arbitrary, irrational, and capricious because *every* motion to reopen could be denied on these grounds. This standard leaves the BIA free to decide cases based on whim or prejudice. This is especially true where, as in this case, the BIA does not consider all relevant factors and fails to articulate a reasoned basis for its decision. As the Supreme Court stated in *Rios–Pineda*,

> While all aliens illegally present in the United States have, in some way, violated the immigration laws, it is untenable to suggest that the Attorney General has no discretion to consider their individual conduct and distinguish among them on the basis of the flagrancy and nature of their violations. There is a difference in degree between one who enters the country legally, staying beyond the terms of a visa, and one who enters the country without inspection. Nor does everyone who illegally enters the country do so repeatedly and with the assistance of a professional smuggler. Furthermore, the Attorney General can certainly distinguish between those who, once apprehended, comply with the laws, and those who refuse to honor previous agreements to report for voluntary departure.

471 U.S. at 451, 105 S.Ct. at 2103; *see also Israel v. INS*, 785 F.2d 738, 742 (9th Cir. 1986) (reversing a BIA refusal to reopen because "the BIA failed to cite a single adverse factor relevant to its exercise of discretion in considering Israel's motion, except for the fact that she had previously been found deportable, which would be true of any alien filing a motion to reopen"). Unless the BIA meant the decision in this case to pronounce a policy of denying all motions to reopen, it must at the very least articulate some reason for denying petitioner's motion to reopen,

while granting others. "The BIA 'may not proceed at whim, shedding its grace unevenly from case to case.' " *Israel,* 785 F.2d at 741. To allow the BIA's decision to stand " 'would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion.' " *Batoon,* 707 F.2d at 402 (quoting *Santana–Figueroa,* 644 F.2d at 1357). Abuse of discretion may be a deferential standard of review, but it is not the same as *no* review.

### III. *CONCLUSION*

Petitioner has resided in the United States for 16 years. She has been married to a United States citizen for 11 years. She has two United States citizen children who speak only English, one of whom may always speak only English. Since her arrival in this country, she has been gainfully employed as a registered nurse; she has helped innumerable ill and elderly Americans during her 16 years here. She is law-abiding. She has a stable family. Because of a youthful indiscretion committed to gain permanent resident status in the United States, she is to be punished all the years of her life: deprived of the right to reenter; deprived of her children and her husband. Under any ordinary meaning that decent, compassionate human beings would attach to the words "abuse of discretion," the BIA has abused its discretion.

We **REVERSE** the BIA's denial of petitioner's motion to reopen and **REMAND** to the BIA for further proceedings. This panel will retain jurisdiction over any further proceedings or any further petitions that may be filed in this matter.

**REVERSED and REMANDED.**