87 F.3d 1321
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Victor Manuel SANCHINELLI-PALMA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70416.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 11, 1996.*
Decided June 19, 1996.
 
 Before: CANBY, NOONAN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Victor Manuel Sanchinelli-Palma, a native and citizen of Guatemala, seeks review pro se of the Board of Immigration Appeals' ("BIA") denial of his motion to reopen deportation proceedings to consider his application for suspension of deportation under section 244(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1254(a). The BIA declined to reopen Sanchinelli-Palma's proceedings because he failed to show extreme hardship. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a) and grant the petition for review.
 
 
 3
 We review the BIA's denial of a motion to reopen for abuse of discretion. Limsico v. INS, 951 F.2d 210, 213 (9th Cir.1991). The BIA must examine the evidence in its entirety, and "must accept as true the facts stated in [the applicant's] affidavits unless they are inherently unbelievable." Id. The BIA may deny a motion to reopen to apply for suspension of deportation if the applicant fails to show that his deportation would result in extreme hardship to himself or to his United States citizen or permanent resident spouse or children. See Watkins v. INS, 63 F.3d 844, 847-48 (9th Cir.1995). While the BIA may interpret extreme hardship narrowly, it may not distort or disregard important aspects of an applicant's claim. See id.
 
 
 4
 Sanchinelli-Palma and his wife entered the United States without inspection in October, 1985, and were immediately placed in deportation proceedings. In March, 1986, their only child Valery was born in California. Because of her severe congenital heart disease, Valery required four cardiothoracic surgeries and extensive medical care, and the Immigration and Naturalization Service ("INS") granted the parents annual extensions of voluntary departure so that they could remain with Valery.
 
 
 5
 Valery unexpectedly died in February, 1994, and the INS did not grant a renewal of Sanchinelli-Palma's voluntary departure status. In October, 1994, Sanchinelli-Palma moved to reopen his deportation proceedings to apply for suspension of deportation based, in part, on the extreme hardship he would face if forced to leave the land where his daughter was born and raised, and where she is buried.
 
 
 6
 In February, 1995, the BIA denied Sanchinelli-Palma's motion to reopen finding that Sanchinelli-Palma's desire to be near his daughter's grave did not constitute extreme hardship. The BIA also determined that Sanchinelli-Palma could not show extreme hardship because he did not have any citizen or permanent resident relatives in the United States; he did not hold strong business or social ties here; and that given his health and job experience in electronics, he would be able to find work in Guatemala.
 
 
 7
 Here, Sanchinelli-Palma presented numerous documents attesting to the unique emotional, spiritual, and psychological hardships he would face if separated from his ties in the United States in the wake of his daughter's death. Ana Soto, the pastor of his church, submitted a letter verifying Sanchinelli-Palma's active membership in the congregation, and noted that the church "united in providing emotional and spiritual support" to him following Valery's death. Ms. Soto also noted that both parents continue to seek spiritual support from their church, and concluded that "[t]heir close ties to the church seems to have encouraged them during their time of grief." Maria Salas, one of Valery's teachers, noted that Mr. and Mrs. Sanchinelli-Palma were very involved in Valery's education, and believed that "their suffering has only be[en] added to by knowing they must leave the place their one and only child is buried." Ms. Salas also felt that their "strong community ties and their religious faith ... would be put in jeopardy if they could not remain in the United States." Dr. Joseph Delgado opined that given Valery's long illness and tragic death, "separation from this land and their daughter would seriously aggravate their pain." Finally, the record contains a letter from Mrs. Sanchinelli-Palma's employer, Diane Matsinger, noting that the couple has strong employment, religious and community ties in the United States. Ms. Matsinger stated that Valery was loved by many people, and that the parents have not recovered from her unexpected death. Ms. Matsinger concluded that because "Valer[y] is buried in Santa Barbara, [she] could not imagine a worse blow to them now than to be separated from her grave site."
 
 
 8
 Because we do not find that the evidence submitted in support of Sanchinelli-Palma's motion to reopen regarding his trauma "inherently unbelievable," the BIA should have accepted it as true. See Limsico, 951 F.2d at 213. The BIA abused its discretion because it failed to consider fully the elements of hardship documented in the record, and it disregarded an important aspect of Sanchinelli-Palma's claim. See Watkins, 63 F.3d at 848. Accordingly, we grant Sanchinelli-Palma's petition for review and remand to allow for a full consideration of the evidence submitted in Sanchinelli-Palma's motion to reopen.
 
 
 9
 PETITION FOR REVIEW GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3