**Nidia Del Rosario URBINA–OSEJO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 95–70648.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Telephonically Jan. 7, 1997.

Decided Sept. 26, 1997.

Amos Lawrence, San Francisco, CA, for petitioner.

Terri J. Lavi, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before: BOOCHEVER, REINHARDT, and RYMER, Circuit Judges.

Opinion by Judge BOOCHEVER; Partial Concurrence and Partial Dissent by Judge RYMER.

BOOCHEVER, Circuit Judge:

Nidia Del Rosario Urbina–Osejo appeals the denial of her motion to reopen immigration proceedings. The Board of Immigration Appeals ("BIA") concluded that she abandoned her right to apply for asylum and withholding of deportation by failing to appear at her deportation hearing eight years earlier, and that she had failed to demonstrate the extreme hardship required to establish prima facie eligibility for suspension of deportation. Urbina argues that she had reasonable cause for her failure to appear because she never received notice of her deportation hearing, and that she did not know she was required to inform the INS of her change of address; the BIA did not address this issue. Urbina also argues that the BIA's refusal to reopen her suspension claim was an abuse of discretion, because its consideration of the relevant factors for establishing extreme hardship was cursory. We agree that the BIA should have considered the first issue, and that its ruling on the suspension claim did not show proper consideration of all the relevant factors. We therefore remand to the BIA.

## FACTS

On October 24, 1986, Nidia Del Rosario Urbina–Osejo ("Urbina"), a Nicaraguan citi-

zen, entered the United States without inspection near Hidalgo, Texas. Then seventeen, Urbina was travelling with her sister and an aunt. She was apprehended when she tried to board an airplane to Miami, Florida. The Immigration and Naturalization Service ("INS") served her with an Order to Show Cause charging her with deportability, and then released her on her own recognizance. Urbina gave a Miami address for notice purposes.

In January 1987, Urbina moved to San Francisco, California, where some of her brothers and sisters lived. Three months after Urbina moved, the INS mailed notice of her deportation hearing, set for July in Texas, to Urbina's Miami address. Urbina declared that she never received the notice, which was not returned to Texas as undeliverable. She did not appear for the hearing. The immigration judge conducted the hearing in absentia and ordered Urbina deported. The warrant of deportation and the deportation notice subsequently were mailed to the Miami address. The mail was returned to Texas.

Urbina settled in San Francisco and finished high school. She worked briefly as a janitor. At the time of her motion to reopen, she was living with her sister, working as a self-employed housekeeper and taking care of her niece while her sister worked.

In November 1994, Urbina filed a motion to reopen her deportation proceedings, requesting the opportunity to apply for political asylum, withholding of deportation, and suspension of deportation. The Immigration Judge ("IJ") denied the motion. Urbina appealed to the BIA, which dismissed her appeal in June 1995.

## DISCUSSION

### I. *"Reasonable cause" for failure to attend deportation hearing*

■ This court reviews for an abuse of discretion the BIA's denial of Urbina's mo-

tion to reopen. *Sharma v. INS*, 89 F.3d 545, 547 (9th Cir.1996).

Under 8 U.S.C. § 1252(b) as in effect at the time of the hearing, an IJ could hold a deportation hearing in absentia if the alien had been given a reasonable opportunity to be present and "without reasonable cause fail[ed] or refuse[d] to attend" the proceedings. A motion to reopen a deportation hearing which was held in absentia would be granted if the alien showed "reasonable cause" for her absence from the hearing. *Sharma*, 89 F.3d at 547.[1] "[W]e review de novo the INS's construction of the definition of 'reasonable cause.'" *Hernandez–Vivas v. INS*, 23 F.3d 1557, 1560 (9th Cir.1994).

In her motion to reopen before the IJ, Urbina argued that the reasonable cause for her failure to appear was that she had not received notice of the 1987 hearing. As the IJ noted, she did not submit any affidavits or other evidence on the issue. On appeal to the BIA, however, Urbina repeated her claim of lack of notice and added a declaration, stating that she never received the notice of the hearing because "my family relocated me from Miami Florida to San Francisco, California. I was a minor at that time and I had no knowledge of the need to report nor of an actual report informing the government of our change of address." The BIA agreed to consider the declaration, and the INS did not object.

The BIA found that Urbina had not demonstrated reasonable cause for her failure to appear. Because Urbina did not notify the IJ of her change of address, the BIA reasoned, it was Urbina's fault that she did not receive the notice. The BIA did not address her statement that she did not know she needed to report her change of address, nor did it call her to testify.

On this appeal from the BIA's decision, Urbina asserts that there was no evidence that she was advised of the requirement that she report any change in address, and that her declaration is evidence that she did not know she had the responsibility to report her

1. Under the current statute, which applies to notices of hearings after June 13, 1992, an order to rescind is warranted only if the alien can demonstrate "exceptional circumstances" for the failure to appear. 8 U.S.C. § 1252b(c)(3); see

*Farhoud v. INS*, 114 F.3d 867, 868–69 (9th Cir. 1997) (rejecting a claim of inadequate notice under the amended statute); *Sharma*, 89 F.3d at 547 n. 2, 548 (same).

change in address when she moved from Florida to California. She argues that her failure to receive notice of the hearing was not her fault, and therefore her lack of knowledge of the hearing was reasonable cause for her failure to attend.

### A. *Jurisdiction*

■ The INS asserts that we have no jurisdiction to review the change-of-address issue, because Urbina did not raise it before the BIA. *See Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir.1994) (court of appeals has no jurisdiction to consider issue not raised in appeal to BIA). Urbina did raise the issue, however, by introducing into evidence her declaration, which stated that she had no knowledge of the change-of-address requirement. The INS did not challenge the admission of the declaration, nor did it present any evidence to contradict it. The BIA did not address the issue of lack of knowledge of the change-of-address requirement in its decision. We conclude that Urbina raised the issue, and we have jurisdiction to consider it.

### B. *Notice*

■ "[N]otice of a deportation hearing sent by regular mail to the last address provided by the alien to the INS satisfies the requirements of constitutional due process...." *Farhoud v. INS*, 114 F.3d 867, 869 (9th Cir.1997). To overcome the presumption of adequate notice when notice of a deportation hearing was sent by a constitutionally adequate method, Urbina must " 'present[ ] substantial and probative evidence ... demonstrating that there was improper delivery or that nondelivery was not due to the respondent's failure to provide an address where [s]he could receive mail.' " *Fuentes–Argueta v. INS*, 101 F.3d 867, 871 (2d Cir.1996) (per curiam) (quoting *In re Grijalva*, Int. Dec. 3246, 1995 WL 314388 (B.I.A. Apr. 28, 1995)).

■ Regulations in effect now and at the time of Urbina's entry into the United States require that when an officer personally serves an order to show cause, as occurred in this case, "the contents of the order to show cause shall be explained." 8 C.F.R. § 242.1. Whether an explanation occurred in this case is not in the record. Even if the officer had explained the OSC to Urbina, however, the OSC in this case makes no mention of the statutory requirement that the alien must report to the INS any change in .address. *See* 8 U.S.C. § 1305(a) (alien must notify Attorney General of change of address within ten days).[2] There is thus no evidence in the record that Urbina was ever informed of the requirement.

Urbina stated in her declaration "I had no knowledge of the need to report ... informing the government of our change of address." Urbina's declaration thus raised the issue whether she had notice of the change-of-address requirement. The requirement did not appear in the OSC, and there is no evidence that the INS officer explained the requirement to Urbina. In fact, the only evidence in the record is to the contrary, as Urbina stated that she did not know of the requirement.

■ We conclude that there is reasonable cause for failure to appear when an alien has not received notice of the time and place of the hearing due to a change of address, and the alien was not informed of a requirement to advise the INS of any change of address.[3]

---

**2.** The current statute, however, requires that the OSC clearly specify that the alien must immediately provide the Attorney General with a written record of any change of address or telephone number, and the consequences for failing to provide the information. 8 U.S.C. § 1252b(a)(1)(F)(i)-(iii). Under the current statute, an explanation of the OSC would therefore necessarily include an explanation of the change-of-address requirement.

**3.** None of the cases cited by the dissent involves a claim that the INS's failure to inform the alien of the change-of-address requirement constituted reasonable cause for the failure to appear at the hearing. In *Farhoud*, 114 F.3d at 869, we de-

nied a due process claim when the notice of the hearing was mailed to the address where the alien resided at the time. In *Sequeira–Solano v. INS*, 104 F.3d 278, 279 (9th Cir.1997), the INS mailed the notice to the address of former counsel provided by the alien, and the alien did not claim he never received the notice. Moreover, *Sequeira–Solano* involved the amended version of 8 U.S.C. § 1252b(a)(1)(F)(ii) (a citation deleted from the dissent's quotation), under which the OSC was required to include the change-of-address requirement. In *Fuentes–Argueta*, 101 F.3d at 870–71, the Second Circuit found adequate notice when the INS sent the notice by certified mail to the alien's current address, and although delivery was attempted twice, no one signed for

**1318**

At the hearing and in its decision, the BIA failed to address the issue whether Urbina was notified of the requirement. Because such a factually intensive question cannot be resolved on appeal, we remand this case to the BIA for further findings.

## II. *Suspension of deportation*

The BIA can deny petitioner's motion to reopen on any of three independent grounds: (1) "failure to establish a prima facie case for the relief sought," (2) "failure to introduce previously unavailable, material evidence," or (3) "a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought."

*Watkins v. INS*, 63 F.3d 844, 847 (9th Cir. 1995) (quoting *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 724–25, 116 L.Ed.2d 823 (1992)); *Gutierrez–Centeno v. INS*, 99 F.3d 1529, 1531–32 (9th Cir.1996).

■ The grounds for granting suspension of deportation are: The alien has been physically present in the United States for at least seven years; is of good moral character; and, his deportation would result in extreme hardship to the alien, or to a spouse, parent or child who is a U.S. citizen or lawful permanent resident. 8 U.S.C. § 1254(a)(1); *Watkins*, 63 F.3d at 848. The applicant has the burden of proving extreme hardship. *Shooshtary v. INS*, 39 F.3d 1049, 1051 (9th Cir.1994). "Although the Board has authority to construe 'extreme hardship' narrowly, this court has required the Board to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Hassan v. INS*, 927 F.2d 465, 467 (9th Cir.1991) (citations and quotations omitted). The BIA must consider all the relevant factors cumulatively in deciding whether the alien has established extreme hardship. *Watkins*, 63 F.3d at 850. The abuse of discretion standard applies to the BIA's determination that Urbina did not demonstrate extreme hardship. *Hassan*, 927 F.2d at 467.

■ The BIA found that Urbina established prima facie eligibility on the first two factors, but failed to show a prima facie case of extreme hardship. Urbina claimed she would have difficulty adjusting to life in Nicaragua, because she had become so acculturated; the BIA found that insufficient to show "extreme hardship," as similar hardship is experienced by most aliens who spend time in another country. Urbina asserted that she faced economic hardship if she were forced to return to Nicaragua and find work in its struggling economy; the BIA found that ordinary economic hardship did not suffice to establish extreme hardship. Finally, Urbina argued that she feared retaliation for her family's political affiliation with the Somoza regime in Nicaragua. She submitted an affidavit stating that her family was strongly identified with the Somoza government, that her father was jailed, that she had been pressured in school and elsewhere to join the Sandinistas, that she was once beaten by a Sandinista youth group, and that one uncle had been killed, and several other uncles had been persecuted, by the Sandinistas. The BIA found that political conditions alone do not justify a finding of extreme hardship, without other factors that make deportation particularly detrimental to the alien.

The BIA's consideration of each of Urbina's assertions of extreme hardship was cursory. In considering her claim of acculturation, the BIA mentioned the presence of Urbina's nuclear family in the United States, but it did not explain how it weighed that factor. "[T]he most important single [hardship] factor may be the separation of the alien from family living in the United States." *Gutierrez–Centeno*, 99 F.3d at 1533 (quotations omitted). Urbina's close family ties (she lived with a sister, and took care of her niece) deserved more consideration.

The BIA's treatment of Urbina's fear of political retaliation was similarly cursory. Without examining Urbina's specific allegations of actions by the Sandinistas against herself and her family in Nicaragua, the BIA

the delivery. *United States v. Estrada–Trochez*, 66 F.3d 733, 735 (5th Cir.1995) applies the requirement that the alien notify the INS of a change of address, but did not involve a claim that the alien did not know of the requirement.

And in *Wijeratne v. INS*, 961 F.2d 1344, 1347 (7th Cir.1992), the alien's accredited representative had received the notice, which constituted effective notice despite the alien's failure to inform the representative or the INS of his move.

simply stated that "political and economic conditions in an alien's homeland are relevant" but do not justify relief unless other factors make deportation extremely hard on the alien. The BIA should have considered, but did not, Urbina's declaration describing how "[Urbina] and her family have had a history of conflict with the Sandinistas." *Gutierrez–Centeno,* 99 F.3d at 1533.

Further, the BIA entirely failed to consider Urbina's special assistance to the community, which "is a relevant factor for suspension of deportation." *Id.* at 1534. The record shows that Urbina worked as a volunteer telephone counselor for the San Francisco Aids Foundation, teaching AIDS prevention to Spanish-speaking callers. This merited "the most serious consideration," *id.,* and received none at all.

Finally, the BIA did not explicitly consider the cumulative effect of the family ties, the difficult readjustment, economic hardship, and political persecution feared by Urbina. We have held that "the BIA must consider the total cumulative effect on th[e] petitioner of all the relevant factors." *Gutierrez–Centeno,* 99 F.3d at 1533.

"When important aspects of the individual claim are distorted or disregarded, denial of relief is arbitrary. Without prescribing any final result, we must remand such cases for proper consideration." *Tukhowinich v. INS,* 64 F.3d 460, 464 (9th Cir.1995) (as amended) (quotations omitted). Accordingly, we remand to the BIA for proper consideration of Urbina's claim of extreme hardship.

On remand, the BIA must review each relevant factor as described above, and show that it has properly evaluated each factor. *Gutierrez–Centeno,* 99 F.3d at 1535. The BIA must also consider the cumulative effect of all the factors in the aggregate. *Id.*

## CONCLUSION

We REMAND to the BIA for a determination whether Urbina had notice of the change-of-address requirement, and for a review of Urbina's claim of extreme hardship, evaluating each relevant factor alone and cumulatively.

RYMER, Circuit Judge, concurring in part, dissenting in part:

I dissent from the majority's unprecedented conclusion that there is reasonable cause for failure to appear when an alien has not received notice of the hearing (sent to her last known address) and the INS hasn't told the alien to tell the INS when her address changes. This holding turns the *alien*'s statutory duty to notify the INS of a change of address upside down, 8 U.S.C. § 1305(a), and it is out of sync with our own precedent and that of other circuits. It depends, moreover, on an argument that Urbina has never made.

Urbina did not argue to the BIA that she missed her deportation hearing because the INS failed to explain her statutory duty to notify it of a change of address. Nor did she argue that she did not know that she was required to tell the INS when she moved. Rather, Urbina argued to the BIA that she had reasonable cause to miss her deportation hearing because she did not receive actual notice of her deportation hearing, and that "[e]ven if she did not advise the Service of her change of address, she was not in conscious violation of the deportation order, since she never received it." It was to support this argument—not the one on which the majority opines—that Urbina submitted a declaration indicating that she "had no knowledge of the need to report nor of an actual report informing the government of our change of address." Thus, the BIA had no obligation to address her statement except to consider it in connection with the issue that Urbina actually raised. That the BIA did. Evidence in the abstract does not preserve an issue for appeal, and we shouldn't forage around the record to find one. In any event, Urbina's petition for review in this court does not raise the issue that the majority decides, either; instead, her petition argues that there is no reasonable assurance that Urbina understood that she was in deportation proceedings in the absence of evidence showing that the Order to Show Cause was explained to her or that she was provided with a Spanish translation of it. There is no evidence that Urbina did not know she had been placed in deportation

proceedings and this issue likewise wasn't presented to the BIA. We therefore lack jurisdiction to consider, or to remand for the BIA to determine, whether Urbina's failure to notify the INS of her current address constitutes reasonable cause for not appearing. *Rashtabadi v. INS,* 23 F.3d 1562, 1567 (9th Cir.1994).

Even assuming that the issue wasn't waived, it is incorrectly decided. The law is clear that an alien released from INS custody on her own recognizance has to keep the INS apprised of a change of address. As 8 U.S.C. § 1305(a) provides:

> Each alien required to be registered under this subchapter who is within the United States shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change and furnish with such notice such additional information as the Attorney General may require by regulation.

*See also* 8 C.F.R. § 265.1 (same). There are no exceptions in the statute or regulations.

Although we have not previously addressed the precise issue the majority decides, we have held that "notice of a deportation hearing sent by regular mail to the last address provided by the alien to the INS satisfies the requirements of constitutional due process...." *Farhoud v. INS,* 114 F.3d 867, 869 (9th Cir.1997); and we and other circuits have also held that failure to receive notice of a deportation hearing does not excuse failure to appear when it is due to the alien's failure to provide an address where she can receive mail. *See Sequeira–Solano v. INS,* 104 F.3d 278, 279 (9th Cir.1997) ("This claim of improper notice fails because it was Sequeira–Solano's responsibility to notify the INS of a change of counsel and concomitant change of address. The INS properly sent the required notice to the only address provided by Sequeira–Solano."); *see also Arrieta v. INS,* 117 F.3d 429, 431 (9th Cir.1997) ("We conclude that the BIA's ruling ... is correct that notice by certified mail sent to an alien's last known address can be sufficient under the Act, even if no one signed for it."); *Fuentes–Argueta v. INS,* 101 F.3d 867, 871 (2d Cir.1996) (presumption of

adequate notice rebuttable only upon "substantial and probative evidence ... that nondelivery [of notice of hearing] was not due to the respondent's failure to provide an address where he could receive mail"); *United States v. Estrada–Trochez,* 66 F.3d 733, 736 (5th Cir.1995) ("[T]he ultimate fault lies with the Appellant for his failure to comply with a law that is essential to the administration of the INS."); *Wijeratne v. INS,* 961 F.2d 1344, 1347 (7th Cir.1992) (alien did not establish reasonable cause because failure to receive notice "was entirely her own fault"). The majority does not explain why the reasoning of these cases should not control here or why we should stray so far afield, on our own initiative, from the approach of our colleagues. Nor does the majority cite any authority for its holding that it could be reasonable for Urbina not to let the INS know that the Miami address she gave it in the first place for notice purposes was later changed to San Francisco.

I therefore dissent from Part I in that we lack jurisdiction to consider the issue, and I concur in the result of Part II.[1] Even if we had jurisdiction, I do not see how Urbina can establish reasonable cause for missing her deportation hearing since the reason she did not receive actual notice was her own failure to give notice of a change of address. Regardless, it seems clear to me that this is precisely the kind of call that the BIA should make in the first instance, not us. *See Hernandez–Vivas v. INS,* 23 F.3d 1557, 1560 (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–845, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).)

---

1. While I think the BIA implicitly considered the cumulative effects of hardship on Urbina, it did

not do so explicitly. I have no quarrel with remanding to the BIA for this purpose only.