*1002 OPINION
TALLMAN, Circuit Judge:
At the outset of her removal proceedings, Odilia de Jesus Velasquez-Escovar gave immigration officials her current address in Los Angeles. But those officials did not properly record it. Instead, they recorded another outdated address and then sent Velasquez’s hearing notice there. Velasquez never got that notice and, without it, she did not know when to appear for her deportation hearing. Understandably, she failed to appear and was ordered removed in absentia. When she found out about that order, Velasquez moved to reopen. An Immigration Judge denied that motion, and the Board of Immigration Appeals affirmed. In so doing, it abused its discretion. Accordingly, we grant Velasquez’s petition for review.
I
Odilia de Jesus Velasquez-Escovar is Guatemalan. She illegally entered the United States around 1990, settling in Los Angeles. She has four children; two are native-born citizens of the United States. She admits that she remains here unlawfully.
In 2007, Velasquez returned briefly to Guatemala. On her way back to Los Angeles, she was pulled over in Refugio, Texas, by local police. Those officers called federal immigration officials, who met Velasquez at the Calhoun County Jail. There, she admitted her alienage and was transported to the Corpus Christi Border Patrol Station for processing.
Velasquez claims that the Corpus Christi-based immigration officials asked her for her current address. She says that she told them that she and her daughters had just moved to 14001 Vanowen Street, Van Nuys, California. Next, she claims she was asked whether she had ever lived at 11827 Valerio Street in Los Angeles. Petitioner says she told them that she had lived at Valerio Street, but that the Vanowen address was her current one. Velasquez says the agents told her that they found the Valerio address by looking up her “identification number,” which she assumes meant the number on her California state identification card.
After hand-serving Velasquez with a Notice to Appear (NTA), immigration authorities released her. The NTA charged her as removable and ordered her to appear in Los Angeles for an immigration hearing at a date and time “to be set” later. The NTA mistakenly listed the Valerio Street address as Velasquez’s current address. We do not know whether Velasquez noticed the error, but we do know that she never brought it to the government’s attention.
NTA in hand, Velasquez returned to California. Since her return, she has lived at the Vanowen address. She spent roughly six months regularly visiting an attorney’s office to check on the status of her case. Eventually she gave up. Having received no further word from the government, she assumed her case had been closed. She was wrong. Fifteen months after Velasquez stopped visiting the lawyer — which was almost two years after she was arrested in Texas — the immigration court mailed a notice setting a date and time for Velasquez to appear. The notice went to Velasquez’s old address on Valerio Street, not her current address on Vanowen. Velasquez did not receive the notice, did not appear, and was ordered removed in absentia. A copy of the removal order was sent to the Valerio address and returned as undeliverable.
Roughly six months later, Velasquez was detained by Immigration and Customs Enforcement. (The record does not say why.) While detained, she learned of the *1003 outstanding removal order and immediately filed a motion to reopen. She argued that she should not have lost her right to a hearing because the government improperly recorded — and then sent notice to — an old address, rather than the current one she claims to have given them. The government argued that it was her burden to tell it that it had the wrong address because she should have noticed the error on the NTA. The IJ agreed with the government and denied the motion to reopen. The BIA dismissed Velasquez’s appeal of that denial. Velasquez now petitions for review.
II
We have jurisdiction under 8 U.S.C. § 1252(a)(1) (2012). Our review includes the “validity of the notice provided to the alien” and “the reasons for the alien’s absence” from the hearing. 8 U.S.C. § 1229a(b)(5)(D) (2012).
III
We review the denial of a motion to reopen for abuse of discretion. Hamazaspyan v. Holder, 590 F.3d 744, 747 (9th Cir.2009). Here, the BIA reviewed the IJ’s decision de novo, so we review only the BIA’s decision. Hosseini v. Gonzales, 471 F.3d 953, 957 (9th Cir.2006). The BIA abuses its discretion when it acts “arbitrarily, irrationally, or contrary to the law.” Lainez-Orbiz v. INS, 96 F.3d 393, 395 (9th Cir.1996).
IV
There is only one question here: Did the BIA abuse its discretion when it decided that Velasquez was not entitled to notice under the immigration statutes? The answer is “yes” because neither of the BIA’s two reasons support its decision. It is arbitrary to discount Petitioner’s unrefuted claim without providing a reason.
A
The immigration statutes governing notice do three things:
(1) They create a right to notice;
(2) They create an exception to that right for aliens who do not fulfill two simple obligations; and
(3) They describe those obligations.
Two provisions create the right to notice. First, 8 U.S.C. § 1229(a)(1) requires that “In removal proceedings ... written notice (in this section referred to as a ‘notice to appear’) shall be given in person to the alien (or, if personal service is not practicable, through service by mail ...) ... specifying ... [t]he time and place at which the proceedings will be held.” Sometimes the NTA leaves the hearing time “to be set,” as it did here. Section 1229(a)(2)(A) covers those cases and cases where hearings are continued: “[I]n the case of any change or postponement in time and place ... a written notice shall be given in person to the alien (or, if personal service is not practicable, through service by mail ...).” Between them, these two provisions create, at a minimum, a right to “written notice” “serv[ed] by mail.” 8 U.S.C. § 1229(a)(2)(A).
That right is “subject to subparagraph (B).” Id. Subparagraph (B) creates the exception: “[A] written notice shall not be required ... if the alien has failed to provide the address required under paragraph [8 U.S.C. § 1229(a) ](1)(F).” 8 U.S.C. § 1229(a)(2)(B); see also 8 U.S.C. § 1229a(b)(5)(B) (identical exception in provision dealing specifically with absentia proceedings). The “address required” language refers to the section that describes *1004 the two simple obligations that aliens must perform to retain their right to notice.
Those two obligations are:
(1) “[T]he alien must immediately [upon service of the NTA] provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting [the removal] proceeding,” and
(2) “[The alien] must provide the Attorney General immediately with a written record of any change of the alien’s address or telephone number.”
8 U.S.C. § 1229(a)(l)(F)(i)-(ii). These are the only two address-related obligations that the statutes impose on aliens. (A regulation, as we will see, may add a third.)
Put simply, aliens are entitled to notice unless they fail to give a current address to the government or fail to let the government know when they move. Here, Velasquez did neither. She claims that she gave the Corpus Christi-based immigration officials her current address on Vanowen Street and that she never moved. Nothing in the record refutes either claim. Accordingly, the statutes entitled her to notice.
B
The BIA’s contrary decision was an abuse of discretion. The BIA decided that Velasquez was not entitled to notice for two reasons. First, the BIA concluded that Velasquez was not entitled to notice because she failed to provide the government with her address: “the respondent was informed of her obligation to inform the Immigration Court of her mailing address. She did not do so. The respondent therefore is not entitled to receive actual notice of her hearing.” Just before it wrote that Velasquez “did not” tell the government her address, the BIA wrote that Velasquez “allegedly informed the DHS that she was living with her daughters at 14001 Vanowen Street.”
In other words, the BIA concluded that Velasquez “did not” provide her current address after acknowledging that she claims she did. This is arbitrary because the BIA gives no reason for discounting Velasquez’s claim. And there is no reason it could give. The claim is facially plausible and supported by Velasquez’s declaration. There is no contrary evidence, and no adverse credibility finding. So far as we can tell, the BIA disbelieved Velasquez for no reason. It can not do that.
The BIA’s second reason is no better. The BIA wrote that “even assuming [Velasquez] told the officer that [Valerio] was her prior address and that officer misunderstood [Valerio] to be her current address, it would not change the result of this case.” It went on: “[Velasquez] was on notice through the address on the NTA and the advisal included with it that she had a duty to notify the Immigration Court of her current address. In other words, it was incumbent on ¡Velasquez] to ensure that a correct address was supplied____[S]he did not do so.” This reason is as inconsistent as the last. The BIA says that “it was incumbent on [Velasquez] to ensure that a correct address was supplied” and then concludes that “she did not do so.” But Velasquez’s unrefuted claim is that she did supply the correct address— Vanowen Street.
Possibly, the BIA meant to say that Velasquez was required to “ensure that the correct address was written down” instead of that she was required to “ensure that the correct address was supplied.” This too would be an abuse of discretion because it takes the NTA advisal’s meaning and stretches it too far. That advisal *1005 says only that “You are required to provide the DHS, in writing, with your full mailing address and telephone number.” Nothing in the advisal mentions or fairly implies any continuing duty, much less a continuing duty to correct the government. Once the alien provides an address and phone number, the alien’s work is done. If the BIA meant to say otherwise, then it abused its discretion.
C
Rather than defend the BIA’s reasoning, the government relies on three alternate grounds to defend the result below. First, the government points to 8 C.F.R. § 1003.15(d)(1). This regulation provides that “if the address on the ... Notice to Appear is incorrect, the alien must provide to the Immigration Court where the charging document has been filed, within five days of service of that document, a written notice of an address and telephone number at which the alien can be contacted.” 8 C.F.R. § 1003.15(d)(1). In effect, this regulation adds a third obligation to the two mentioned in the statutes. In other words, the statutes require aliens to (1) provide an address and (2) tell the government if they move, and the regulation demands that they also (3) tell the government if it puts the wrong address on the NTA.
We agree with the government that the regulation fits the situation here. Velasquez admits receiving the NTA, which bears an incorrect address. The regulation — and common sense — put the burden on the alien to inform the immigration court that the government got it wrong. But because the BIA’s decision failed to invoke § 1003.15(d)(1), either by its name or by its logic, this court cannot rely on it to affirm. E.g., Navas v. I.N.S., 217 F.3d 646, 658 n. 16 (9th Cir.2000) (holding that we cannot affirm the BIA “on a ground upon which it did not rely”).[1]
Moreover, the NTA itself never mentions § 1003.15(d)(1) or otherwise puts aliens on notice that an NTA with an incorrect address is their problem. Rather, the NTA warns aliens that they will be removed in absentia if they fail to appear and that the “government shall not be required to provide [them] with written notice” if they fail to provide a current address or fail to notify the government when they move.[2] This tracks the statutes but not the regulation. It never says anything like “if the address listed on the front of this form is incorrect, it is your *1006 responsibility to notify the immigration court.”
And this omission may preclude the government from relying on the regulation in cases like this. According to the BIA, aliens cannot be held to the two statutory obligations until the government gives them notice of those obligations by serving the NTA. In re G-Y-R-, 23 I. & N. Dec. 181, 184-86 (BIA 2001) (en banc). In other words: no notice, no obligation.[3] By that logic, even aliens who have been served an NTA cannot be held to the address obligation in § 1003.15(d)(1) because the NTA does not mention it. Thus, even if the BIA had relied on § 1003.15(d)(1) here, the BIA’s own precedent would still compel us to reverse.
Next the government relies on dicta in Hamazaspyan v. Holder, 590 F.3d 744, 746 n. 3 (9th Cir.2009). There, the immigration court sent a mis-addressed hearing notice to Hamazaspyan and no notice at all to his lawyer. Hamazaspyan, 590 F.3d at 745-46. Neither appeared, and Hamazaspyan was ordered removed in absentia. Id. The IJ and BIA denied his motion to reopen, but we granted his petition for review, holding “that serving a hearing notice on an alien, but not on the alien’s counsel of record, is insufficient. ...” Id. at 749.
The government does not rely on this holding. Rather, it points to a footnote where we rejected Hamazaspyan’s alternative argument: “[E]ven if Hamazaspyan provided the government with his correct address, and the government agents incorrectly transcribed what he said, Hamazaspyan would not be entitled to relief because he failed to correct the mistake when it was brought to his, or his counsel of record’s, attention.” Id. at 746 n. 3. But the BIA did not rely on Hamazaspyan. So, for the same reason that § 1003.15(d)(1) cannot save the government, neither can Hamazaspyan. Navas, 217 F.3d at 658 n. 16.
Finally, the government attempts to win by analogy. It says that this case — where an alien failed to correct her address — is like cases where asylum applicants fail to correct their own false testimony, Ahir v. Mukasey, 527 F.3d 912, 918 (9th Cir.2008)„ or the false testimony of their witnesses, Singh v. Holder, 643 F.3d 1178, 1182-83 (9th Cir.2011). But — again—the BIA did not rely on this analogy, so we cannot either. Navas, 217 F.3d at 658 n. 16. Nor would we if we could. The analogy does not work because deception and carelessness are two different things.
V
Although we hold that Velasquez was entitled to notice, we understand why the IJ, the BIA, and the government pressed the opposite result. What makes that result so attractive is that it would have been so easy for Velasquez to notice the error on the NTA and so easy for her to correct it. A little diligence and common sense on her part could have avoided this appeal. But neither diligence nor common sense are notice. Notice is notice. And, under the circumstances here, Velasquez was entitled to notice.
PETITION GRANTED.

. The dissent argues that the Petitioner had an obligation to provide her address in writing to the agency. Dissenting Opinion, pp. 1007-08. However, neither the BIA nor the Immigration Judge raised this issue, therefore, similar to the regulatory invocation of § 1003.15(d)(1), this Court cannot affirm the BIA on grounds upon which it did not rely. Furthermore, the government’s brief did not raise the written address issue, thus it is waived. See Sola v. Holder, 720 F.3d 1134 (9th Cir.2013).

. The whole warning reads:
Failure to appear: You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

. The dissent points out a distinction without a difference with respect to the facts in In re G-Y-R-. See Dissenting Opinion, p. 1008-09. A defective notice and no notice both amount to no notice.