RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ANTHONY THOMPSON,

*Petitioner,*

*v.*

LORETTA E. LYNCH, Attorney General,

*Respondent.*

No. 14-3899

On Petition for Review of an Order of the
Board of Immigration Appeals
No. A076 507 897.

Decided and Filed:  June 12, 2015

Before:  GILMAN, ROGERS, and SUTTON, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Black P. Somers, BLAKE P. SOMERS LLC, Cincinnati, Ohio, for Petitioner. Manuel A. Palau, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GILMAN, J., delivered the opinion of the court in which ROGERS, J., joined, and SUTTON, J., joined in part.  SUTTON, J. (pp. 14–15), delivered a separate opinion concurring in part and in the judgment.

_____

### OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Petitioner Anthony Thompson, a native of Jamaica, was arrested on marijuana-trafficking charges in Cleveland, Ohio in March 1999. While he was detained, an officer of the former Immigration and Naturalization Service (INS)

1

processed Thompson and personally issued him a Notice to Appear. Soon thereafter, the immigration court in Cleveland mailed Thompson notice of his upcoming removal hearing. Thompson failed to appear at the hearing and was ordered removed *in absentia*. Fourteen years later, Thompson moved to reopen his removal proceedings, arguing that he did not receive notice of the 1999 hearing. The immigration judge (IJ) denied Thompson's motion and the Board of Immigration Appeals (BIA) upheld that order. Thompson now petitions this court for review. For the reasons set forth below, we **DENY** his petition.

## I. BACKGROUND

### A. Factual and procedural background

The relevant facts in this case are not disputed and were aptly summarized by the BIA as follows:

> The respondent was arrested by the Cleveland police department in 1999 because he was present at a house during a controlled drug delivery at 7305 Colfax Road, Cleveland, Ohio 44104, and he was placed under an immigration detainer. The Notice to Appear was issued on March 9, 1999, and it alleged that the respondent entered the United States on an unknown date at an unspecified location. The respondent received personal service of the Notice to Appear, which he signed, and which listed his address as 2761 E. 126 Street, Cleveland, Ohio 44120. It informed him about his responsibility to inform immigration authorities about any address changes and the consequences for failure to appear. The Form I-213 also listed the respondent's address as 2761 E. 126 Street, Cleveland, Ohio 44120. A hearing notice was mailed to the respondent at the E. 126 Street address informing him of a hearing scheduled for December 17, 1999. It was not returned by the Postal Service.

> Following a hearing conducted in absentia on December 17, 1999, at which [Thompson] failed to appear and the legacy Immigration and Naturalization Service (INS) presented evidence regarding his removability, an Immigration Judge found him subject to removal as charged, determined that he had abandoned all potential applications for relief, and ordered him removed from the United States. A copy of the removal order was mailed to the respondent at the E. 126 Street address and it was not returned by the Postal Service.

> Over 14 years later, on March 13, 2014, [Thompson], through counsel, filed a motion to rescind his in absentia removal order. He alleged that the INS officer who interviewed him in the Cleveland jail told him that the house on Colfax Road was a "drug house," and that he should move to a different house. [Thompson] further claimed that he told the INS officer that he knew a woman who lived at the E. 126 Street address. However, after his release from jail, he

indicated that the woman refused to permit him to live at the E. 126 Street address and that he therefore resided at the Colfax Road address. [Thompson] alleged that it was error for the INS officer to list the E. 126 Street address on the Notice to Appear because he did not inform the officer that he resided at that address. He did not deny that he received and signed the Notice to Appear, which contained detailed information about an alien's responsibility to inform immigration authorities about any address changes and about the consequences for failure to appear.

. . .

. . . In a decision dated August 2, 2014, the Immigration Judge denied the respondent's motion to reopen because the hearing notice was mailed to the E. 126 Street address listed in the Notice to Appear and the Notice to Appear informed him of his responsibility to report any address changes. Although he claimed that he did not live at the E. 126 Street address, the Immigration Judge noted that he had not provided any information about where he was living in 1999, and that his affidavit about his residence in 1999 was insufficient corroboration. Furthermore, the respondent did not report his Colfax Road address as his residence after he allegedly learned that he could not live at the E. 126 Street address and therefore he did not fulfill his obligation to report any address changes as set forth in the instructions contained in the Notice to Appear. Finally, the Immigration Judge observed that the respondent did not take any action to resolve his immigration status even though he knew he had been placed in removal proceedings when he signed the Notice to Appear in 1999, and he did not indicate whether he was eligible for any form of relief in 1999 which would have motivated him to appear for his hearing.

(citations omitted) (brackets added).

The BIA affirmed the IJ's decision. It found that the IJ was justified in ordering Thompson's removal *in absentia* because either (1) Thompson did not actually live at East 126 Street and failed to "fulfill his obligation to report his address change," or (2) he did live at the East 126 Street address but failed to receive the mailed notice due to "some failure in the internal workings of the household" (quoting *Matter of G-Y-R-*, 23 I. & N. Dec. 181, 189 (BIA 2001)). The BIA did not attribute Thompson's failure to appear to any mistake by the government.

## II. DISCUSSION

### A.     Standard of review

"A motion to reopen is a form of procedural relief that asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (internal quotation marks omitted). We review the BIA's denial of such a motion under the abuse-of-discretion standard. *Camaj v. Holder*, 625 F.3d 988, 991 (6th Cir. 2010). The BIA abuses its discretion only when its determination was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (quoting *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006)). Where, as here, the BIA provides its own reasoning for the denial, rather than summarily affirming the IJ, we review only the BIA's decision. *Cordova v. Gonzales*, 245 F. App'x 508, 511-12 (6th Cir. 2007).

### B.     The BIA did not abuse its discretion in finding that Thompson failed to rebut the presumption of receipt of notice

#### 1.     *Notice of removal proceedings*

Removal proceedings under the Immigration and Nationality Act are initiated when an alien is provided with notice of the proceedings through service of a Notice to Appear. 8 U.S.C. § 1229(a)(1). A Notice to Appear must provide the alien with notice of particular information, including the nature of the proceedings against him, the acts or conduct alleged to be in violation of law, and the time and place at which the removal proceedings will be held. *Id.* § 1229(a)(1). Where, as here, the Notice lists the hearing time as "to be set," "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." 8 C.F.R. § 1003.18(b).

An alien may be served with a Notice to Appear (or notice of the time and place of the removal hearing) either in person or by mail. 8 U.S.C. § 1229(a)(1). Pursuant to § 1229(c), service by mail is considered sufficient if there is proof of attempted delivery to the last address provided by the alien in accordance with § 1229(a)(1)(F). Section 1229(a)(1)(F), in turn,

requires that the Notice inform the alien of his affirmative duty to provide "the Attorney General" with a written record of (1) "an address and telephone number (if any) at which the alien may be contacted," and (2) "any [subsequent] change of the alien's address or telephone number." Change-of-address notifications provided to either the Attorney General or to the immigration court—both of which are under the Department of Justice's umbrella—are sufficient to satisfy § 1229(a)(1)(F). *Qumsieh v. Ashcroft*, 134 F. App'x 48, 50-51 (6th Cir. 2005).

### 2. *Reopening of removal proceedings*

Failure to appear at a removal hearing may result, as it did here, in the IJ's ordering that the alien be removed *in absentia*. 8 U.S.C. § 1229a(b)(5). The immigration court may rescind an *in absentia* removal order and reopen proceedings in one of three circumstances: (1) the alien files a motion within 180 days of the removal order and demonstrates that he failed to appear due to exceptional circumstances, (2) the alien files a motion at any time showing that he failed to appear because he was in federal or state custody, or (3) the alien files a motion at any time showing that he did not receive proper written notice. *Id.* § 1229a(b)(5)(C). Thompson's motion proceeds under the third category.

In order to prevail on his claim of nonreceipt, Thompson must overcome the presumption of delivery that arises when a Notice to Appear or notice of hearing is properly addressed and mailed to the last address provided by the alien. *See Ba v. Holder*, 561 F.3d 604, 607 (6th Cir. 2009) (citing *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673 (BIA 2008)). "To do so, [Thompson] must show: (1) that he provided the court with a correct, current address; and (2) that the notice was never received." *See Timchenko v. Holder*, 485 F. App'x 813, 815 (6th Cir. 2012) (citing *Ba*, 561 F.3d at 607) (brackets added). This circuit, in assessing nonreceipt claims like Thompson's, has looked to the following nonexhaustive list of evidence, both direct and circumstantial, as set forth in *Matter of M-R-A*:

> (1) the respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the respondent's actions upon learning of the in absentia order, and whether due diligence was exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the respondent had an

incentive to appear; (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear; (6) the respondent's previous attendance at Immigration Court hearings, if applicable; and (7) any other circumstances or evidence indicating possible nonreceipt of notice.

*Ly v. Holder*, 327 F. App'x 616, 622 (6th Cir. 2009) (quoting *Matter of M-R-A*, 24 I. & N. Dec. at 674).

There is no dispute that the immigration court mailed Thompson's notice of hearing to the East 126 Street address. As a result, only two related issues were before the BIA: (1) whether Thompson's address was on Colfax Road or on East 126 Street at the time that the immigration court mailed the notice; and (2) whether Thompson lived up to his obligation to supply the immigration court with his current address, as required by 8 U.S.C. § 1229(a)(1)(F).

The BIA posited two possible scenarios relating to these issues, both of which end poorly for Thompson. Option one: Thompson's address was 2761 East 126 Street as indicated in the Notice to Appear. In this scenario, Thompson fulfilled his duty to report his current address under § 1229(a)(1)(F)(i), but his motion to reopen should be denied because the court mailed the notice of hearing to the proper address and Thompson failed to rebut the presumption of delivery. Option two: Thompson's address was 7305 Colfax Road, as he now claims. Under this scenario, Thompson failed to provide the immigration court with his updated address as required by 8 U.S.C. § 1229(a)(1)(F)(ii). Having failed to do so, Thompson has no basis to object to his lack of notice and, pursuant to § 1229a(b)(5)(B), to his removal *in absentia*.

But Thompson presents a third option. He argues that, although the East 126 Street address was listed on the Notice to Appear,

> this was not the "last address provided by" Mr. Thompson, as required by 8 U.S.C. § 1229(a). While the E. 126 Street address was *an* address that Mr. Thompson told the immigration officer about during his interview, it was not the address he provided as his address or even as somewhere he could receive mail. It was simply the address of a woman he knew, and he described it as such. The "last address provided" by Mr. Thompson, therefore, is not E. 126 Street, but Colfax Road.

(Emphasis in original.) In other words, Thompson argues that even though the Notice to Appear did not list his current address, he did not violate the requirements of § 1229(a)(1)(F)(ii) because he gave his current address to the immigration officials and never *changed* his residence prior to the court's mailing of his hearing notice. *Cf.* 8 U.S.C. § 1229(a)(1)(F)(ii) ("[T]he alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.").

### 3. *The Ninth Circuit granted a petition for review under similar facts in* **Velasquez-Escover**

Thompson's narrow reading of the immigration statutes is not without support. Based on a strikingly similar set of facts, a divided panel of the Ninth Circuit recently granted a petition for review in *Velasquez-Escovar v. Holder*, 768 F.3d 1000 (9th Cir. 2014). The petitioner in *Velasquez-Escovar* claimed that, although she verbally gave immigration officials her current address, the officials recorded a different, outdated address on her Notice to Appear. Despite the error, Velasquez signed the Notice to Appear, and the immigration court subsequently mailed her hearing notice to the address contained therein. Because she no longer lived at that address, she never received the notice. And because she never received the notice, Velasquez did not appear at her removal proceeding. She was thus ordered removed *in absentia*. An IJ denied her subsequent motion to reopen and the BIA affirmed, finding that Velasquez was not entitled to notice for two reasons: (1) she "was informed of her obligation to inform the Immigration Court of her mailing address [but] did not do so"; and (2) "it was incumbent on Velasquez to ensure that a correct address was supplied [but] she did not do so." *Id.* at 1004 (alterations omitted).

The Ninth Circuit rejected both of the BIA's rationales. First, the court's majority concluded that the BIA abused its discretion by irrationally rejecting Velasquez's assertion that she had, in fact, provided officials with her current address: Per the majority, "[t]he claim is facially plausible and supported by Velasquez's declaration. There is no contrary evidence, and no adverse credibility finding." *Id.* As to the BIA's second line of reasoning, the Ninth Circuit held that the BIA abused its discretion by taking the Notice to Appear's instructions too far:

> That advisal says only that "You are required to provide the DHS, in writing, with
> your full mailing address and telephone number." Nothing in the advisal
> mentions or fairly implies any continuing duty, much less a continuing duty to

> correct the government.  Once the alien provides an address and phone number, the alien's work is done.  If the BIA meant to say otherwise, then it abused its discretion.

*Id.* at 1004-05.

In dissent, Judge Johnnie Rawlinson was of the opinion that the petition should be denied given the deferential abuse-of-discretion standard.  *Id.* at 1006 (Rawlinson, J., dissenting).  She particularly took issue with the notion that the BIA could abuse its discretion by enforcing an applicable regulation, namely 8 C.F.R. § 1003.15(d)(1), which the government had raised in its brief.  That regulation provides that "if the address on the . . . Notice to Appear is incorrect, the alien must provide to the Immigration Court . . . a written notice of an address . . . at which the alien can be contacted."  8 C.F.R. § 1003.15(d)(1).  As Judge Rawlinson reasoned, "the BIA could not act arbitrarily or irrationally by imposing an obligation that has been memorialized in a regulation." *Velasquez-Escovar*, 768 F.3d at 1007 (Rawlinson, J., dissenting).

The majority, however, deemed the regulation irrelevant with regard to Velasquez because (1) the BIA did not invoke the regulation in its opinion, and (2) "the NTA [Notice to Appear] itself never mentions [the regulation] or otherwise puts aliens on notice that an NTA with an incorrect address is their problem . . . .  It never says anything like 'if the address listed on the front of this form is incorrect, it is your responsibility to notify the immigration court.'" *Id.* at 1005-06.

The key facts in the case before us are quite similar to those in *Velasquez*.  Both Thompson and Velasquez allegedly provided immigration officials with their correct addresses, only to have those officials transcribe the wrong address onto their respective Notices to Appear.  Both individuals signed their Notices to Appear despite the erroneous addresses and, as a result, failed to receive the notices of hearing mailed to them.  Consequently, both were ordered removed *in absentia* and later moved to reopen the proceedings against them.  And in each instance, their motions were denied by an IJ and the BIA on the basis that the petitioners had failed to comply with the requirement that they inform the government of their current mailing address, thereby forfeiting the right to notice of any subsequent removal proceedings against them.

We thus respectfully disagree with our concurring colleague's characterization that this case is "materially distinct" from *Velasquez*. In particular, we see no basis in the record for the concurrence's suggestion that "[u]nlike Velasquez, Thompson knew where the government believed he could be reached," *Concurring Opinion*, p. 14. The two records instead indicate that neither individual was aware of the allegedly erroneous address on their respective forms. But both had reason to realize the mistake because each signed their Notice to Appear. Furthermore, the concurrence's rationale that we can deny Thompson's petition based solely on his failure to meet the address-reporting requirements of 8 U.S.C. § 1229(a)(1)(F) does not avoid the conflict between this case and *Velasquez* because that rationale would have been equally applicable to the facts before the Ninth Circuit.

Even the most striking difference between the two cases—the fact that Thompson filed his motion to reopen 14 years after his hearing date as opposed to Velasquez who waited only 6 months—is not as significant as it might first appear. According to the Ninth Circuit, Velasquez "spent roughly six months [after her Notice to Appear] regularly visiting an attorney's office to check on the status of her case. Eventually she gave up. Having received no further word from the government, she assumed her case had been closed. She was wrong." *Velasquez-Escovar*, 768 F.3d at 1002. But 15 months after "giving up," Immigration and Customs Enforcement officers detained her on unrelated grounds. At that point she discovered the outstanding removal order against her, and only then did she proceed to file her motion to reopen. That is, had she not been detained, she presumably would have continued taking no action on her case for an indefinite period of time in the mistaken belief that the case had been closed.

### 4. *We respectfully disagree with the outcome in* **Velasquez**

Given the factual similarities between the two cases, we would arguably be obliged to grant Thompson's petition if *Velasquez* were a binding precedent in this circuit. But the Ninth Circuit's holding in *Velasquez* is in fact persuasive authority only and, after careful consideration, we respectfully disagree with our sister circuit's conclusion.

The majority opinion in *Velasquez* determined that the BIA abused its discretion based on two purported errors. First, the Ninth Circuit determined that, even though 8 C.F.R. § 1003.15(d)(1) "fit the situation," it was not relevant in Velasquez's case "because the BIA's

decision failed to invoke § 1003.15(d)(1), either by its name or by its logic." *Velasquez-Escovar*, 768 F.3d at 1005. The Ninth Circuit's reasoning rests on the following guidance from the Supreme Court: "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

The key phrase in the above excerpt, for our purposes, is "the grounds invoked." Although the BIA failed to cite the relevant regulation in either Velasquez's or Thompson's case, the regulation's content clearly undergirds the logic of "the grounds invoked" in each. Judge Rawlinson made the same point in her dissent in *Velasquez*. *Velasquez-Escovar*, 768 F.3d at 1007 ("Because [the BIA's opinion] reflects the requirements of the regulation, there was no abuse of discretion.") (Rawlinson, J., dissenting). Here, the BIA's reliance on § 1003.15(d)(1) is clear from its determination that "[i]f [Thompson] was not living at the E. 126 Street address . . . , then it was his responsibility to immediately notify immigration authorities of his correct address." We agree with Judge Rawlinson's analysis on this point. Furthermore, contrary to our concurring colleague's suggestion, we have not "needlessly implicate[d]" *Chenery* in our analysis. *Concurring Opinion*, p. 14. Rather, Thompson relies heavily on *Chenery* and its progeny for his argument that we should follow the Ninth Circuit's lead and grant his petition for review.

The *Velasquez* majority's second rationale for granting review was the failure of the Notice to Appear to explicitly alert aliens that they have an obligation under 8 C.F.R. § 1003.15(d)(1) to correct any government errors made on that form. Rather, the Notice to Appear warns that one must (1) provide the government with a current address, and (2) alert the government of any changes thereto. These requirements track the statutory language found in 8 U.S.C. § 1229(a)(1)(F)(i)-(ii). But the Ninth Circuit's reading of the Notice to Appear ignores the fact that the form also warns aliens that the address on the NTA, if not updated, will be used by the government for future immigration-related communications: "You will be provided with a copy of this form. Notices of hearing will be mailed to this address." The form goes on to caution that "[i]f you fail to attend the hearing . . . , a removal order may be made by the immigration judge in your absence." Thompson signed his Notice to Appear despite this

admonition and the fact that the form listed an address where he knew he could not be reached. We are left to wonder how Thompson expected the government to contact him regarding his pending removal hearing when the form he signed listed an incorrect address.

The fact that the immigration official made the alleged error does not absolve Thompson. Thompson had both the opportunity to provide his current, correct address at the time he received the Notice to Appear and the obligation to ensure that the INS had an address at which he could be reached throughout the proceedings. This obligation necessarily included a duty to correct the address listed on the Notice to Appear, particularly since the Notice to Appear informed him that all future mailings would be sent to the address listed on the form.

As this and other courts have noted in various contexts, including immigration cases, one's signature on a form or contract establishes a strong presumption that "[o]ne who accepts a written contract is conclusively presumed to know its contents and to assent to them." *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000) (quoting 17A Am. Jur. 2d Contracts § 224 (1991)); *see also, Hanna v. Gonzales*, 128 F. App'x 478, 480 (6th Cir. 2005) (holding that because the petitioner signed, under oath, his adjustment-of-status application, the law charges him with knowledge of the application's substance despite his assertion that he was never actually aware of its contents); *Bautista v. Star Cruises,* 396 F.3d 1289, 1301 (11th Cir. 2005) (noting that one "who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation") (internal quotation marks omitted); *United States v. Puente,* 982 F.2d 156, 159 (5th Cir. 1993) (holding that "a defendant who deliberately avoids reading the form he is signing cannot avoid criminal sanctions for any false statements contained therein").

Even if Thompson were to argue that the warning on the Notice to Appear was too vague to fully apprise him of his obligation to correct the incorrect address on his form, the maxim that "ignorance of the law is no defense" curtails such an argument. Put simply, Thompson was required to comply with 8 C.F.R. § 1003.15(d)(1) regardless of his knowledge thereof. *See Trinidad-Contreras v. Gonzales*, 202 F. App'x 943, 945 (9th Cir. 2006) (explaining that regulations are binding regardless of actual knowledge or the hardship resulting from innocent ignorance) (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)).

The propriety of this outcome is supported by the adverse implications of the alternative. Specifically, the holding in *Velasquez* renders the requirements of 8 U.S.C. § 1229(a)(1)(F) and the related threat of *in absentia* removal relatively toothless. Under *Velasquez*, an alien can ignore an incorrect address listed on her Notice to Appear, skip her removal hearing, and then reopen the proceedings against her at any time in the future by claiming that the error was the government's fault. Although there is nothing in the record to suggest that Thompson (or Velasquez, for that matter) intentionally created this unfortunate situation, Thompson's lack of diligence in correcting the mistaken mailing address has led to the very problem that the relevant statutory and regulatory provisions are designed to avoid. For these reasons, we conclude that the BIA did not abuse its discretion by declining to reopen Thompson's case.

The BIA's opinion, however, appears to have relied in part on a misreading of Thompson's arrest records. Thompson argued below that the records corroborated his claim that he lived on Colfax Road at the time that his hearing notice was mailed by the immigration court. But the BIA mistakenly concluded that "the arrest records reflect only that he was arrested at the Colfax Road address without any indication that this address was his residence." This reading of the arrest records is inaccurate.

Thompson attached the "Offense/Incident Reports" for three individuals—himself, Haieema Winsom, and Cynthia Tell—to his motion to reopen. Each report includes two separate address fields: one labeled "Primary Arrested" and the other labeled "Arrest Location." The former address field falls under the heading of "Arrestee: Present Information," and the latter is part of the section entitled "Arrest Information." For Thompson and Winsom, the addresses listed in each field are the same: "7305 COLFAX RD." That is not the case for Tell, however. Although her "Arrest Location" was also the Colfax address, her "Primary Arrested" is listed as "11602 CROMWELL AV." This strongly indicates, consistent with Thompson's motion to reopen, that Tell was arrested while visiting the residence where both Thompson and Winsom lived.

But the BIA's apparent misreading of the records is harmless. Although the arrest records help prove that Thompson lived on Colfax Road at the time he was arrested, they do not tell us where he resided several months later when the immigration court mailed him the notice

of hearing. Only the latter address is relevant to our analysis in light of the requirement that Thompson "immediately" provide the government with a record of any change to his address. *See* 8 U.S.C. § 1229(a)(1)(F)(ii). More importantly, even if Thompson consistently resided on Colfax Road, that does not change the fact that the Notice to Appear listed the East 126 Street address. If, as Thompson now claims, the form was filled out in error, then Thompson failed to comply with 8 C.F.R. § 1003.15(d)(1) by not correcting that mistake.

The arrest records therefore have no impact on our analysis. Under the Immigration and Nationality Act, the government is entitled to rely on the accuracy of the last address provided by an alien. Thompson signed the Notice to Appear that listed 2761 East 126 Street as his mailing address, and he did not subsequently notify the government of a correct and/or changed address. By mailing a hearing notification to that address, the government fully satisfied its obligation to provide Thompson with notice of the hearing against him. 8 U.S.C. § 1229(c) ("Service by mail . . . shall be sufficient if there is proof of attempted delivery to the last address provided by the alien . . . ."). Whether or not Thompson was actually aware of the immigration official's error on the Notice to Appear, the law charges him with the knowledge of that error, which he was obligated to correct under 8 C.F.R. § 1003.15(d)(1). Accordingly, even taking Thompson's version of the relevant events as true, we cannot conclude that the BIA abused its discretion by refusing to reopen Thompson's removal proceedings.

### III. CONCLUSION

For all of the reasons set forth above, we **DENY** the petition for review.

---

**CONCURRENCE**

---

SUTTON, Circuit Judge, concurring in part and concurring in the judgment. I agree with the majority that the government provided sufficient notice to Anthony Thompson when it mailed its hearing notice to the address listed in Thompson's signed Notice to Appear. *See* 8 U.S.C. §§ 1229a(b)(5)(A), 1229(a)(1)(F), 1229(c). I write separately to make two points.

*First*, there is an additional reason not to be concerned about *Velasquez-Escovar v. Holder*, 768 F.3d 1000 (9th Cir. 2014). The two cases are materially distinct. *Velasquez* involved a woman who gave her address to an immigration official. The official mistakenly wrote down the wrong address. *Id.* at 1002. In this case, by contrast, no one made a mistake; there is no dispute that an immigration official wrote down the last address Thompson provided. And that makes all the difference. Unlike Velasquez, Thompson knew where the government believed he could be reached. So unlike in Velasquez's case, the government mailed Thompson's hearing notice to the last address he knowingly provided. 8 U.S.C. § 1229(a)(1)(F)(i). I therefore do not think our decision is in tension with the Ninth Circuit's opinion.

*Second*, the majority needlessly implicates *SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 196 (1947), to disagree with the Ninth Circuit (among others) about its scope. *See, e.g.*, *Velasquez-Escovar*, 768 F.3d at 1005; *Island Creek Coal Co. v. Henline*, 456 F.3d 421, 426 (4th Cir. 2006). The immigration judge and Board of Immigration Appeals appear to have relied exclusively on 8 U.S.C. § 1229(a)(1)(F) in deciding that Thompson had an obligation to "immediately notify immigration authorities of his correct address, and not wait until 2014." *See* A.R. 5, 53. But the majority affirms the Board's decision on the basis of a regulation, 8 C.F.R. § 1003.15(d)(1), that neither the immigration judge nor the Board invoked. This affirmance is arguably at odds with the Supreme Court's repeated statements that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 87 (1943); *see also Chenery II*, 332 U.S. at 196. Nor may courts "accept appellate counsel's post hoc rationalizations for agency

action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962). *Chenery* demands that an agency express the reasoning behind its decision, even if it does so with "less than ideal clarity." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). So while it may be true that the Board implicitly relied on 8 C.F.R. § 1003.15(d)(1) in its order, I am uncomfortable affirming the Board for that unspoken reason.

Fortunately, we do not need to rely on the majority's reading of *Chenery*, as there is another sensible ground for decision: the statute. Thompson signed a document that instructed him to provide the government, "in writing, with your full mailing address and telephone number. . . . If you do not . . . provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing." A.R. 116. These instructions derive from 8 U.S.C. § 1229(a)(1)(F), which required Thompson to inform the government in writing of his address and any change in his address. The Board and immigration judge relied on § 1229(a)(1)(F) in upholding the government's conduct. I would deny Thompson's petition on this basis rather than create a circuit split over *Chenery*'s meaning that neither party briefed.