FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WENDY MARIELA URQUIA-YANEZ, AKA Wuendi Mariela Urquia Yanes,

*Petitioner*,

v.

TODD BLANCHE, Acting Attorney General,

*Respondent*.

No. 25-1136

Agency No. A205-382-847

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 1, 2025
San Francisco, California

Filed May 8, 2026

Before: Ryan D. Nelson, Daniel P. Collins, and Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke

# SUMMARY[*]

## Immigration

Denying Wendy Marie Urquia-Yanez's petition for review of a decision of the Board of Immigration Appeals, the panel held that the Department of Homeland Security ("DHS") is not constitutionally required to translate the entirety of a Notice to Appear—including aliens' obligation to provide changes of address to the immigration court—to aliens in their native language.

Urquia-Yanez argued that the BIA abused its discretion in upholding the immigration judge's denial of her motion to reopen because she was not afforded proper notice of the removal hearing at which she was ordered removed in absentia. However, an alien may not rely on lack of notice if the alien did not provide his or her current address to the government after being notified of the obligation to do so. Here, DHS served Urquia-Yanez with a Notice to Appear, in English, which explained her obligation to update her address if she moved. Urquia-Yanez failed to provide the immigration court with an updated address after moving, and the immigration court thus mailed a Notice of Hearing to her old address. When Urquia-Yanez failed to appear at that hearing, she was ordered removed in absentia.

The panel rejected Urquia-Yanez's argument that because her obligation to update addresses was not explained to her in her native language of Spanish, the later-provided Notice of Hearing was constitutionally insufficient. The

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel wrote that the circuit's immigration precedent already recognizes that English-language notices of an alien's obligations generally are reasonably calculated to reach and to inform aliens of their obligations, and thus sufficient to satisfy the demands of due process. The panel held that such a standard likewise applies to an English-language-only written notice of an alien's obligation to update her address with the immigration court after moving.

## COUNSEL

George Rios (argued), Cook & Olson, Fresno, California, for Petitioner.

Andrew J. Oliveira (argued), Trial Attorney, Office of Immigration Litigation, Civil Division; Justin Markel, Senior Litigation Counsel; Brett A. Shumate, Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

VANDYKE, Circuit Judge:

Petitioner Wendy Marie Urquia-Yanez ("Urquia-Yanez") challenges an in absentia removal order entered after she failed to appear at her removal hearing. The undisputed record shows that the Department of Homeland Security ("DHS") served Urquia-Yanez with a Notice to Appear that listed the address she had provided to DHS and

that explained her obligation to update her address if she moved, that the immigration court subsequently mailed a Notice of Hearing to the address that Urquia-Yanez had provided, and that Urquia-Yanez failed to provide the immigration court with an updated address after moving. But Urquia-Yanez nonetheless argues that DHS's alleged failure to explain—in her native language—that she must update her address with the immigration court if she moved, excuses her failure to do so. We hold what our case law has long assumed: that DHS is not constitutionally required to translate the entirety of a Notice to Appear to aliens in their native language.

## I. Background

Wendy Urquia-Yanez is a native and citizen of Honduras, who entered the United States on April 12, 2012, near Hidalgo, Texas, without being admitted or paroled. She was taken into custody the same day she entered the United States and was released five days later. On April 17, 2012, DHS served Urquia-Yanez with a Notice to Appear when she was released, which charged her with removability as an alien who was neither admitted nor paroled. The notice, written in English, informed Urquia-Yanez that she was required to "notify the Immigration Court immediately … whenever you change your address." Upon her release, Urquia-Yanez provided DHS with an address in Hanford, California, and that was the address listed on the Notice to Appear, which also identified the immigration court in San Antonio, Texas as the relevant court. Thereafter, on April 30, 2012, the immigration court in San Franciso mailed Urquia-Yanez a Notice of Hearing at her listed address in Hanford, informing her of her upcoming February 28, 2013, hearing in that court. Urquia-Yanez failed to appear at that hearing and, on February 28, 2013,

the Immigration Judge ("IJ") ordered Urquia-Yanez removed in absentia.

Urquia-Yanez filed a motion to reopen on May 17, 2021. She argued that the Notice to Appear was defective because it did not comply with the statutory requirement to provide the date and time for the hearing and that, as a result, the IJ lacked jurisdiction to conduct the proceedings that culminated in her removal order. In the alternative, Urquia-Yanez argued that her failure to appear should be excused because she was unaware of her obligation to inform the immigration court of her change of address and therefore could not be charged with constructive notice of documents sent to her prior address. In an accompanying declaration, Urquia-Yanez explained that she lived at the address in Hanford, California, for a short period but moved in "early May" of 2012 to a new address in Visalia, California. She also claimed that DHS informed her of an upcoming hearing in September 2012 but did not inform her of the date and time of the hearing. The IJ denied the motion to reopen on May 26, 2021, finding that Urquia-Yanez properly received notice to appear for her hearing. Urquia-Yanez did not appeal that order.

Urquia-Yanez filed a motion to reconsider on June 25, 2021. She argued that the IJ erred on two points. First, she argued that the IJ erred in concluding the immigration court had jurisdiction to conduct removal proceedings. Second, Urquia-Yanez argued that she did not know that she was required to inform the IJ of any change in address.

The IJ denied her motion to reconsider, finding that Urquia-Yanez had constructive notice of the hearing because the April 30 notice was mailed to her last known address. The IJ also found that Urquia-Yanez had been informed of

the requirement to notify the IJ of any change in address by the Notice to Appear that was personally served upon her at her release.

Urquia-Yanez repeated her arguments on appeal to the BIA, arguing that the IJ lacked jurisdiction because the April 30 Notice to Appear was defective. And once again she argued that she did not have notice of the hearing, claiming that she was not informed of her duty to inform the IJ of any change in address.

The BIA dismissed the appeal from the denial of Urquia-Yanez's motion for reconsideration in January 2025. The BIA concluded that this court's decision in *United States v. Bastide-Hernandez*, 3 F.4th 1193 (9th Cir. 2021), foreclosed the argument that the defective Notice to Appear divested the IJ of jurisdiction.[1] The BIA also held that, under the Supreme Court's decision in *Campos-Chaves v. Garland*, 602 U.S. 447 (2024), the defective Notice to Appear did not provide grounds for recission of her in absentia removal order. The BIA further found that Urquia-Yanez had received proper notice of her hearing because the April 30 notice was sent to her last known address.

Urquia-Yanez then filed a petition for review before this court. She argues that the BIA abused its discretion in upholding the IJ's denial of her motion to reopen because she was not afforded proper notice of her removal hearing.

---

[1] The BIA mistakenly cited the panel decision in *Bastide-Hernandez*, which had been vacated upon the grant of rehearing en banc. *See United States v. Bastide-Hernandez*, 20 F.4th 1230 (9th Cir. 2021). However, by the time the BIA ruled, the en banc court had also held that the lack of a date and time in a Notice to Appear did not deprive the immigration court of jurisdiction. *See United States v. Bastide-Hernandez*, 39 F.4th 1187, 1193 (9th Cir. 2022) (en banc).

Specifically, she argues that because her obligation to update addresses was not explained to her in her native language of Spanish, the later-provided April 30 Notice of Hearing was insufficient.

## II. Standard of Review

This court has jurisdiction under 8 U.S.C. § 1252(a) to review the denial of a statutorily authorized motion to reopen removal proceedings. *See Kucana v. Holder*, 558 U.S. 233, 250 (2010). We review the BIA's denial of motions to reopen and motions for reconsideration for abuse of discretion. *Tadevosyan v. Holder*, 743 F.3d 1250, 1252 (9th Cir. 2014); *Reyes v. Ashcroft*, 358 F.3d 592, 595 (9th Cir. 2004); *Zhao v. Holder*, 728 F.3d 1144, 1147 (9th Cir. 2013). The BIA abuses its discretion when it "acts 'arbitrarily, irrationally, or contrary to the law,' and 'when it fails to provide a reasoned explanation for its actions.'" *Tadevosyan*, 743 F.3d at 1252–53 (quoting *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)). "We 'review questions of law de novo' and the agency's 'factual findings for substantial evidence.'" *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022) (citation omitted). Under the substantial evidence standard, this court must accept the agency's findings unless the record compels a reasonable factfinder to conclude to the contrary. *Smolniakova v. Gonzales*, 422 F.3d 1037, 1044 (9th Cir. 2005).

## III. Discussion

The IJ may order an alien removed in absentia if that alien fails to attend a removal hearing. 8 U.S.C. § 1229a(b)(5)(A). An alien may move to rescind an in absentia removal order by showing that the alien "did not receive notice" of the hearing "in accordance with paragraph

(1) or (2) of section 1229(a) of this title." 8 U.S.C. § 1229a(b)(5)(C). The BIA held that a proper Notice of Hearing was served by mail to Urquia-Yanez under paragraph (2) of section 1229(a), and proper service under that paragraph alone is sufficient to support in absentia removal under *Campos-Chavez*. *See* 607 U.S. at 462–65. Although Urquia-Yanez was no longer at the address to which that Notice of Hearing was mailed, an alien may not rely on lack of notice if the alien did not provide his or her current address to the government after being notified of the obligation to do so. *See* 8 U.S.C. §§ 1229(a)(2)(B), 1229a(b)(5)(B); *see also Velasquez-Escovar v. Holder*, 768 F.3d 1000, 1004 (9th Cir. 2014) ("[A]liens are entitled to notice unless they fail to give a current address to the government or fail to let the government know when they move.").

## A.

Urquia-Yanez does not contest that, if she was properly advised of her obligation to notify the immigration court if she changed her address, then the immigration court's service of the notice of hearing at her last known address constituted sufficient notice of her removal proceedings. The undisputed record reflects that notice was mailed to her address in Hanford, California, which was the address she provided to DHS upon her release from custody and that was included in her Notice to Appear. Urquia-Yanez concedes that she moved from this address without providing her new address to the immigration court—either in San Antonio or in San Francisco—before the notice was mailed to her. If Urquia-Yanez was properly advised of her obligation to update her address with the immigration court, then the written Notice to Appear that was mailed to "the most recent address provided" by her "shall be considered sufficient" for

purposes of imposing an in absentia removal order. 8 U.S.C. § 1229a(b)(5)(A). Under those circumstances, Urquia-Yanez would have constructive notice of her hearing and cannot rely on a lack of notice to rescind her in absentia removal order unless DHS failed to provide her with legally sufficient notice to update her address. *See Velasquez-Escovar*, 768 F.3d at 1004.

## B.

In arguing that the BIA committed reversible error, Urquia-Yanez asks this court to hold, for the first time, that English notice of an alien's obligation to update her address is constitutionally insufficient where the alien is not a native English speaker. We decline to do so.

This court has held that the Due Process Clause requires immigration agencies to provide "sufficient" notice of pending actions to aliens. *Khan v. Ashcroft*, 374 F.3d 825, 828 (9th Cir. 2004). But whether notice is "sufficient," as we have explained, "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 830 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). And our "case law has made clear that actual notice of a hearing is not always required to satisfy the requirements of due process." *Id.* at 828. To the contrary, we have held that English-language notices may be "reasonably calculated to reach and to inform" aliens of their obligations, sufficient to satisfy the demands of due process. *Id.* at 829.

Urquia-Yanez argues that we should find that due process required DHS to provide notice of an alien's obligation to update her address in the alien's native

language.[2]  She doesn't point to any precedent requiring that result but asks us to extend two of our decisions to cover her circumstances.   First, she equates the English notice she received here with the complete lack of notice this court criticized in *Urbina-Osejo v. INS*, 124 F.3d 1314 (9th Cir. 1997).   In *Urbina-Osejo*, an alien was detained and served with an Order to Show Cause. *Id.* at 1316.  That order never explained the alien's need to update her address if she moved, either in English or any other language. *Id.* at 1317. So once the alien moved, she did not update her address and a Notice to Appear was sent to her old address. *Id.* at 1316. We held that reasonable cause existed to rescind an in absentia removal order where "an alien has not received

---

[2] Although the BIA noted that the Notice to Appear "indicates that oral notice in Spanish was provided" to Urquia-Yanez concerning the consequences of failing to appear in immigration court, the agency did not find—and there is no basis in the record to conclude—that any such oral notice included an advisal to update her address with the immigration court.  Indeed, in a sworn declaration, Urquia-Yanez stated that none of the papers were orally explained to her, and she further specifically denied that she had been provided with oral notice of the obligation to update her address.  Accordingly, in its answering brief, the Government did not dispute that Urquia-Yanez was not provided with such oral notice, and it instead argued only that no such oral notice was required.  We therefore take it as conceded that Urquia-Yanez was not provided with oral notice in Spanish of her obligation to inform the immigration court of any change of address.  Moreover, we are not presented with any question as to whether the limited "oral notice" requirements of 8 U.S.C. § 1229a(b)(7) were satisfied here.  That provision requires "oral notice" of certain information, "either in the alien's native language or in another language the alien understands," *only* in order to trigger the statutory bar on specified forms of relief "for a period of 10 years after the date of the entry of the final order of removal," and Urquia-Yanez's in absentia removal order here was not used to bar any of the discretionary forms of relief identified in § 1229a(b)(7).

notice of the time and place of the hearing due to a change of address, and the alien was not informed of a requirement to advise the INS of any change of address." *Id.* at 1317.

Urquia-Yanez argues that DHS's complete failure to provide any explanation of an alien's obligation to update her address in *Urbina-Osejo* is the same as DHS's failure to *additionally* explain that requirement *in Spanish* here. But the two are different. No regulatory or statutory provision requires DHS or the immigration court to provide an alien with notice of her obligation to update her address *in her native language* in order to subsequently enter an in absentia removal order. On the contrary, the statute requires "oral notice, either in the alien's native language or in another language the alien understands, . . . of the consequences under this paragraph of failing . . . to attend a proceeding under this section" only in order to trigger the statutory bar on specified forms of relief "for a period of 10 years after the date of the entry of the final order of removal." 8 U.S.C. § 1229a(b)(7). Congress could have chosen to place a similar "native language" requirement in the provisions governing in absentia removal, but it conspicuously did not do so. And holding that due process requires such notice would run counter to our previous holding that English notices generally are "reasonably calculated to reach and to inform" aliens of their obligations. *Khan*, 374 F.3d at 829.

Urquia-Yanez contends that *Khan* is distinguishable because there the alien, in response to a prior English-language notice, had already appeared at one English-language hearing at which he then successfully requested a continuance and was provided with the English-language notice of the second hearing (which was the one he did not attend). *Khan*, 374 F.3d at 829. We do not think *Khan* can be evaded so easily. As *Khan* recognized, the circumstances

there demonstrated that the alien in that case either was able to "communicat[e] his request in English" or *was assisted "by someone who understood English*," thereby confirming that an English-language "notice was reasonably calculated to reach and to inform [the alien] within the meaning of the Due Process Clause." *Id*. at 829 (emphasis added). Where, as here, a non-English-speaking adult alien is provided with a formal legal notice in English, is released from custody, and has ample time thereafter to act on the notice, that English-only written notice "typically satisfies due process because it puts the alien on notice that further inquiry is needed, leaving the alien to seek help from someone who can overcome the language barrier." *Lopez v. Garland*, 990 F.3d 1000, 1003 (6th Cir. 2021) (citation omitted); *see also Platero-Rosales v. Garland*, 55 F.4th 974, 977 (5th Cir. 2022) ("[D]ue process allows notice of a hearing to be given solely in English to a non-English speaker if the notice would put a reasonable recipient on notice that further inquiry is required." (citation omitted)).

Urquia-Yanez's reliance on *United States v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012), at oral argument is likewise misplaced. There, we considered whether a petitioner's waiver of his right to appeal was knowing and voluntary where the petitioner did not speak English and was not apprised of the contents of the waiver in his native language. *Id.* at 1045. We held that no such knowing and voluntary waiver existed where the only evidence of such waiver was a signed English waiver—the contents of which were never explained to a petitioner who did not understand English. *Id.* at 1044.

But as explained in *Reyes-Bonilla*, affirmative waivers of appellate rights in removal proceedings are subjected to a heightened standard, which considers whether such a waiver

was "considered and intelligent." *Id.* at 1043 (citing *United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005)). No such heightened standard applies to DHS's communication of a petitioner's *obligations*, which only considers whether such notice was "reasonably calculated to reach and to inform" petitioners of the procedures they must follow to obtain immigration relief. *Khan*, 374 F.3d at 829. Urquia-Yanez presents no compelling argument for why such a heightened standard should apply to DHS's notice requirements here.

## IV.

Our immigration precedent already recognizes that English-language notices of an alien's obligations generally are "reasonably calculated to reach and to inform" aliens of their obligations, and thus sufficient to satisfy the demands of due process. *Khan*, 374 F.3d at 829. We hold that such a standard likewise applies to an English-language-only written notice of an alien's obligation to update her address with the IJ after moving.

**PETITION DENIED.**